Simpson v. Osborn.

---

ROBERT SIMPSON v. R. S. OSBORN *et al.*

1. AUSTRALIAN ·BALLOT LAW—*Certifying Nomination of District Judge.* Where nomination papers in apparent conformity to the provisions of the Australian ballot law, nominating a candidate for judge of a judicial district, have been filed with the secretary of state more than 30 days before the day of election, and where such nomination papers have not been held insufficient by the secretary of state, auditor of state, and attorney general, or a majority of them, it is the duty of the secretary to certify to the county clerk of each county within the judicial district the name and residence of the candidate named in such nomination papers, not less than 15 days before the election, notwithstanding the fact that objections thereto have been filed and remain undetermined.

2. TWO POLITICAL PARTIES—*Candidate of Both.* The fact that the person named in such nomination papers as the candidate of the petitioners is also the candidate of another political party does not affect the right of petitioners to have his name printed on the official ballot, in a separate column, under the heading of their party name, as their candidate.

3. MANDAMUS, *Who May Maintain.* The petitioners nominating a can-
date for a public office have such special and peculiar interest in
having his name appear on the official ballots as is necessary to en-
title them to maintain an action to require the secretary of state to
certify the fact of his nomination to the various county clerks in the
district.

## *Original Proceeding in Mandamus.*

ON the 5th day of October, 1893, there was filed in the
office of the secretary of state a petition, signed by the plain-
tiff and 24 other qualified voters of the thirty-fifth judicial
district of this state, nominating William Thomson as the
candidate of the "miners and laboring men's party" for judge
of said district, to be voted for at the ensuing election.   On
the 23d of October, at 10:25 P. M., objections to said nomina-
tion paper were filed by other electors of said judicial district.
Thereupon the defendants fixed the time and place for a
hearing upon said objections before the attorney general, audi-
tor and secretary of state, on Monday, October 30, 1893, at 9
o'clock A. M., at the office of the secretary of state.   The sec-
retary regarded it as his duty to withhold certificates of such
nomination, which are required, under § 13 of the Australian
ballot law, to be forwarded to the county clerks of the sev-
eral counties in the judicial district, until after the objections
pending should be determined by the special tribunal of state
officers before named.

This action is brought to compel the secretary to issue such
certificates.   In the objections filed, it is alleged that two per-
sons, whose names purport to be signed to the nominating
papers, never did in fact so sign them.   Upon said paper is an
affidavit of one George Sturnam, stating that he personally
saw each of the petitioners subscribe his name to the paper,
and knows that each is a qualified voter of the thirty-fifth ju-
dicial district.   No evidence was introduced to the contrary.
William Thomson is also the candidate of the republican
party, and it is alleged in the answer that the "miners and
laboring men's party" have not made any nomination of a
candidate for any other office to be voted for at the ensuing

election. Other facts are stated in the opinion herein, filed November 11, 1893.

*David Overmyer, S. B. Bradford,* and *J. T. Pringle,* for plaintiff.

*Gleed, Ware & Gleed,* and *Chas. Hamble,* for defendants.

The opinion of the court was delivered by

ALLEN, J.: We are called on in this case to construe certain provisions of chapter 78 of the Laws of 1893, known as the "Australian ballot law." The plaintiff and 24 others signed and caused to be filed with the secretary of the state, under the provisions of § 5 of the act under consideration, a paper nominating William Thomson for judge of the thirty-fifth judicial district. Section 5 is as follows:

"SEC. 5. Nominations for candidates for any office to be filled by the voters of the state at large may also be made by nomination papers, signed in the aggregate for each candidate by not less than five hundred (500) qualified voters of the state. Nominations of candidates for office to be filled by the electors of a county, district or other division less that a state, may be made by nomination papers, signed in the aggregate for each candidate by not less than twenty-five (25) qualified voters of such county, district, or division. Nominations of candidates for offices to be filled by the electors of a city, town, precinct or ward may be made by nomination papers signed in the aggregate for each candidate by not less than ten (10) qualified voters of such city, town, precinct, or ward. Each elector signing a certificate shall add to his signature his place of business and post-office address."

Section 10 provides:

"SEC. 10. The certificates of nomination and nomination papers being so filed, and being in apparent conformity with the provision of this act, shall be deemed to be valid, unless objection thereto is duly made in writing. Such objections or other questions arising in relation thereto in the case of nomination of state officers or officers to be elected by the voters of a division less than the state and greater than a county, shall be considered by the secretary of state, auditor of state and attorney general, and the decision of a majority of these

officers shall be final. . . . In any case where objection is made, notice shall forthwith be given to the candidates affected thereby, addressed to their place of residence as given in the nomination papers, and stating the time and place, when and where such objections will be considered."

Section 13 reads:

"SEC. 13. Not less than fifteen (15) days before an election to fill any public office, the secretary of state shall certify to the county clerk of each county within which any of the electors may by law vote for the candidates for such office, the name and residence of each person nominated for such office, as specified in the certificates of nomination or nomination papers filed with the secretary of state."

The objections in this case were not filed with the secretary of state till late in the evening of October 23.

The main question presented for our consideration is whether the secretary of state should delay certifying the nomination to the clerks of the counties included within the judicial district till after the objections to the nomination papers have been passed on by the special tribunal created by § 10, or must send forward the certificates 15 days before the election, notwithstanding the pendency of such objections. By § 7 of the act, it is provided that all nomination papers for any office to be filled by the electors of the entire state, or a district greater than a county, shall be filed with the secretary of state not more than 60 nor less than 30 days before the day of the election. The nomination paper in this case was filed on October 5. The only objections urged here are such as appear on the face of the petition. The secretary of state expresses his entire willingness to issue the certificate if under the law it is his duty to do so. The petition has affixed to it 25 signatures, and an affidavit showing that all the signers are qualified voters of the thirty-fifth judicial district. The residence and post-office address of the first three is written out, "Burlingame, Kas.;" that of the following names on the same page, however, is merely indicated by ditto marks underneath the words, "Burlingame, Kas.," and as to the last name on the first page of the petition, it is difficult

to say whether there are any marks to indicate the petitioner's residence, or not, the dots for this name and the one immediately above it being somewhat confused.

This is the first time this act has been brought to the attention of this court for a construction of any of its provisions. The main purpose of the law, evidently, is to enable voters to express their real wishes by their ballots, freed entirely from all influences which might tend to corrupt or intimidate them, and also to provide for printing and distributing, at public expense, ballots, which will afford all political parties and considerable groups of electors a fair opportunity to vote for the candidates of their choice. For the purpose of carrying out these eminently wise and beneficial purposes, the statute should receive the most liberal construction. The election in any event must be held on the day appointed by law. It is, therefore, of the utmost importance that the ballots should be printed in due time, and distributed as provided in the act. The law requires all nomination papers, like that under consideration, to be filed not less than 30 days before the day of election, and provides that all such papers shall be open for the inspection of the public. Persons desiring to make objections to any such papers may do so at once; but in this case the objections were delayed so long that it was physically impossible for the state officers named in § 10 to give notice and have a hearing on such objections in time for the secretary of state to comply with § 13 and certify to the county clerks the nominations 15 days before the election. May an elector of the district wait until so late a day, and then delay the forwarding of certificates for state and district officers merely by filing objections? If so, an exception will be engrafted on the provisions of § 13 not placed there by the legislature, which will practically nullify it. We are unable to see that very serious harm can come from the printing of the name of a candidate on the official ballot, even though the certificate of his nomination be informal. The people on election day will vote only for the candidates of their choice, and are not likely to be seriously

misled by any fraudulent or unauthorized nomination.  On
the other hand, most deplorable consequences might ensue if
contentions over the regularity of nomination papers are to
be prolonged past the time when the officers charged with the
duty of certifying to nominations and causing
ballots to be printed are required by law to act
in preparing for the election.  We think that
§ 13 is strictly mandatory, and that the secretary
must forward his certificate at least 15 days before the day
of election.

1. Australian
ballot law—
certifying
nomination
of district
judge.

Whether the objections to this petition under consideration
are such as would warrant the special tribunal created by the
statute in rejecting it, we need not determine.  We are of
the opinion that, in the absence of any such determination, it
is not so wholly defective that it may be utterly disregarded,
nor has it been so treated or considered by the secretary of
state.    If the secretary of state, attorney general and auditor
had held the petition insufficient, the petitioners, under the
provisions of § 9, might remedy the defect by filing new pa-
pers.    But where no such adverse decision has been made, the
certificate of nomination to supply the vacancy could not be
made to comply with the provisions of § 9, and, if filed as an
original petition less than 30 days before the day of election,
it would be too late.    If a decision on such objections adverse
to the petitioners should be made at so late a day as to ren-
der it physically impossible for them to file certificates to cor-
rect the error, and have the name of their candidate placed
on the ballot before election day, the petitioners might be
wholly deprived of their rights under the law.

It is further objected, that William Thomson is the candi-
date of the republican party, and that, under the certificate
of his nomination by that party, his name will be printed on
the ticket in any event, and that the law does not require
that his name should appear under different headings.    We
think that each political party has a perfect right to select its
candidates as it pleases, and have their names printed under
its party heading; that there is nothing in the law nor in

reason preventing two or more political parties,

2. Two political parties—candidate of both.

whether acting through conventions or by petitions, from selecting the same individuals for one or more of the offices to be filled. Nor does the fact that the miners and laboring men's party saw fit to nominate a candidate for judge alone in any manner affect their rights.

A final objection, that the plaintiff, Robert Simpson, is not a proper party, is made, and the cases of *Bobbett v. The State, ex rel.*, 10 Kas. 9; *Turner v. Comm'rs of Jefferson Co.*, 10 id. 16; *Nixon v. School District*, 32 id. 510; *Clark v. Comm'rs of Montgomery Co.*, 34 id. 632, are cited as authorities against the plaintiff's right to maintain the action. The plaintiff sues on behalf of himself and all the other petitioners. Have he and those for whom he acts such special and peculiar interest as will authorize the prosecution of this action by him in their behalf? The question is not without difficulty. We must consider it in the light of our knowledge of the frequent bitterness and intensity of political contests, and of the existence of well-defined political organizations. Public officers, whose duty it is to represent the state, will usually, if not invariably, adhere to one or another of the contending parties, and may even themselves be candidates of their party at the election. While it is true that this fact might not always, and should never, influence such officers to fail to perform any public duty, we think that one political party should never be required, in matters directly affecting a popular election, and its right of having the names of its candidates appear on the official ballots, to have their cases in court in any manner or to any extent subject to the direction or con-

3. Mandamus, who may maintain.

trol of members of an adverse party. We think that the petitioner in this case has such special and peculiar interest as entitles him to maintain this action.

A peremptory writ will be awarded.

All the Justices concurring.