## BNEJ. F. DUVALL *vs.* RICHARD J. SWANN ET AL., BOARD OF SUPERVISORS OF ELECTION, ETC.

*Elections and Voters—Mandamus to Prohibit Supervisors of Election from Printing on Ballot Name of Candidate Nominated by Alleged Insufficient Certificate—Writ Not to be Issued When Nugatory—Discretion of Board of Supervisors.*

Code, Art. 33, secs. 38, 42,A provides for the nomination of candidates to be voted for at an election and the printing of their names upon the official ballot by means of a certificate of nomination signed by a designated number of voters according to the office to be filled, as well as by regular party conventions. It is provided, among other things, that each signer shall append to his signature his residence, occupation and place of business, and that such certificate of nomination shall be filed with the Board of Supervisors of Election not less than ten days before the day of election. The petition in this case filed by a taxpayer of Prince George's County and the candidate of the Republican party for County Commissioner, set forth that a certificate of nomination of a certain person as a "Reform Republican" candidate for the office of County Commissioner, to be voted for at an election to be held on November 5th, 1901, was handed to one of the Supervisors of Election on October 25th, 1901, and on the next day—October 26th—was produced at a meeting of the Board of Supervisors; that the certificate was not signed in the manner required by law by the requisite number of voters; that the party designation of the person so pretended to be nominated was misleading, etc., and that the certificate was not filed within the time required by law. The petition prayed for a writ of *mandamus* commanding the Board of Supervisors to treat said certificate of nomination as void and to omit the name of the nominee therein from the official ballot to be used at the election on November 5th. On October 30th, a demurrer to the petition was sustained and the same was dismissed. Upon appeal, *Held*,

1st. That even if the judgment of the lower Court was erroneous, it would now be futile and nugatory to revesre the same and order a writ of *mandamus* to be issued.

2nd. That apart from this consideration, the petition does not state a case justifying the issue of *mandamus*, since the Board of Supervisors in passing upon the sufficiency of a certificate of nomination does not exercise a clear ministerial function but, according to the allegations of the petition itself, the Board makes inquiry into, and passes judgment upon, questions of law and fact, and since the exercise of such a discretionary power by the Board cannot be controlled by *mandamus* the action of the trial Court in dismissing the petition was right.

3rd. That the Court will not determine in this proceeding whether the certificate of nomination referred to was legally sufficient or not, since it would in so doing pass upon the rights of parties who are not before the Court, but the petitioner must be remitted to other proceedings to contest the election, if the result thereof was adverse to him and he was injured by illegal action of the Board.

Appeal from an order of the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. C. Smith*, for the appellant.

1. The Act of 1901, ch. 2, sec. 50, provides, "when the name of a political party is given in connection with the name of a candidate nominated, as provided in section 38 of this article, it shall be stated on the ballot to the right of the name of the candidate; but if there shall have been any nomination for the same office by a convention or primary election claiming the same party name, duly certified as herein provided, the word 'Independent' shall precede the party name."

It appears from the record that the party name selected by the alleged signers of the certificate of nomination was that of "Republican." Now, although there had been a nomination for the same office by a convention claiming the same party name, duly certified, the Board of Supervisors of Election permitted this ticket to be placed upon the official ballot without the word "Independent" preceding the party name. The appellant contends that in the face of the plain provisions of the Acts above referred to the Court below erred in dismissing the petition for *mandamus*.

2. The Act of 1896, ch. 202, provides for the method to be pursued when it is desired to nominate a candidate or candidates otherwise than by a party convention or primary election. By the terms of this Act, 200 signatures are required, *and in addition thereto*, each signer *shall* append to his signature (1) his residence; (2) occupation; and (3) place of business. It cannot be contended this provision is directory

merely, for were it held so to be, Article 46 of the same Act would become a nullity.

The provision not being directory, it is mandatory.   Now, let us look at the certificate of nomination.   It pretends to have the legal signatures of 212 voters of Prince George's County.   We find, however, that two men give no residence ; 15 men give no place of business, and one man, gives neither occupation nor place of business ; we find a list of 27 names with no designation of place of business ; we find three men who, apparently have no occupation or place of business, and one man does not designate his occupation ; W. F. Latimer fails to designate his residence, occupation or place of business, likewise J. F. Tucker ; lastly, we find one individual who designates his occupation as being that of a "voter."

So that, we find that 52 signers have not attempted to comply with the plain provisions of our Act, which at once reduces the number of legal signatures from 212 to 160, whence it follows that the said certificate of nomination was *insufficient* and should have been thrown out.

3. Act 1896, ch. 200, requires that certificates of nomination shall be filed with the Board of Supervisors of Elections not less than 10 days before the day of election.

Election day, 1901, fell on November 5th.   On the night of October 25th, 1901, ten days before, some one handed to Benjamin D. Stephens, one of the members of the Board of Supervisors of Election for Prince George's County, the pretended certificate of nomination.   Next morning, October 26th, Mr. Stephens filed the certificate with the Board, of which he was a member, at their office in Upper Marlborough.

Was that the filing of a certificate of nomination with the Board of Supervisors of Election for Prince George's County not less than 10 days before the day of election ?   The appellant contends not.   Our election law points out clearly that publicity is the vital consideration in the orderly and fair conduct of election preliminaries.   The Board of Supervisors shall have an office and they shall there have all the paraphernalia necessary to carry on business.   *Poe's Supp.*, Art.

33, sec. 5. They shall have clerks. *Ibid*, sec. 6. A paper is said to be filed when it is delivered to the proper officer, and by him received to be kept on file. 1 *Bouv. Law Dict.*, 782. The origin of the term indicates very clearly that the filing of a paper can only be effected by bringing it to the notice of the officer, who anciently put it upon the string or wire. *Philips et al.* v. *Beene's administrators*, 38 Ala. 248. "File," is not synonomous with "deposited." *People* v. *Peck*, 67 Hun. at 570.

A paper is filed when delivered to the proper officer and by him received to be kept on file. 13 *Am. & Eng. Ency. of Law*, 14–16; *Brothers* v. *Mundel, etc.*, 60 Texas, at 244.

The Board of Supervisors must not only have an office, employ a clerk, have proper office fixtures and the like, but they must also keep all nominating certificates *filed with* such board (not deposited with a member thereof), for two years, always open to public inspection. *Poe's Supp.*, Art. 33, sec. 41. It is idle, therefore, to contend that when Mr. Stephens received the paper before referred to, it was filed with the Board of Supervisors.

*Marion Duckett* and *James C. Rogers*, for the appellees, submitted the cause on their brief.

The demurrer admits the facts alleged in the petition in connection with the exhibits forming a part of it so far as they are well pleaded. This par. 6 of the petition alleges the certificate of nominations was signed by only 179 instead of 200 as required by section 38, but the nominating certificate itself being part of the petition, shows it was signed by over 200, so the demurrer is not circumscribed to the admission that there were only 179 signers.

The real point in the case is whether this certificate of nomination was presented to the Supervisors of Elections ten days before the election as required by sec. 42.

It is manifest that the purpose of the law was to allow those entitled to vote, who were dissatisfied with the regular party convention nominees, the opportunity of placing, through the

formula of a certificate of nomination, the names of such candidates as they wanted to support on the official ballots at the next election. It is submitted, that this right is assured to them when they shall have gotten up a proper petition and filed the same with the Supervisors of Elections in the time prescribed, and that the words *filing with* mean or are equivalent to a delivery to or leaving with them or either of them under sec. 42. The ten days are given in order that the supervisors may file the certificates, vote upon its form and execution and arrange for its publication in the official ballot. The person delivering the certificates to the supervisors could not file them anyway. The rule is universally established, and for plain reasons, that when a paper, which the law requires to be filed or recorded by some *official*, is delivered, it is from that moment considered filed, and the duty of the party so delivering the paper to the proper custodian of it is discharged and his rights secured, when this is done, and this too, though the one whose duty it is to file or record it, does not actually do either. When one delivers a deed or mortgage, for instance, to the clerk to be recorded, it is as to him then of record or on file. The deliverer has no power to file or record it. The *Encyclopedia of Law*, 2d ed., vol. 13, p. 16, reads: "That a paper is filed when delivered to the proper officer and by him received to be kept on file." The true distinction seems to be that to file a paper on the part of the party is to place it in the custody of the clerk, but to file it on the part of the clerk is to endorse upon it the date of its reception, and to retain it in his office, subject to the inspection of whomsoever it may concern. Again, "Where a statute provided that certain officers of a political convention should file nomination certificates with the county clerk, it was held that where the officers prepared a proper certificate and presented it to the clerk to be filed, this was sufficient within the meaning of the statutes, although the clerk failed to file it."

It is contended the petition should have been delivered to all of the supervisors or to the board in session. The law does not require either. It could not in fact be delivered to

but one. Must they all join hands and receive it like jurors with hands on the Sacred Book. Should it be delivered to one, recalled, and No. 2 hunted up and delivered to him, again delivered to No. 3; if so, number three would be the only one in law to whom under these circumstances, it would be delivered, because it is well established that a paper must be left as a *final act* with the one whose duty it is to file it or record it; if given for a temporary purpose, or withdrawn, it would not be delivered until the last one got it. To get all three supervisors together, or to deliver to one after the other, as a prerequisite to the mere delivery of the paper, would entail a duty on those getting up such certificates, which would defeat the purpose of the voters on the supposed last day when it could be delivered (ten days ahead of election day) the supervisors were not in session, each lived at a different part of the county. One purposely secreted himself, or the weather, roads and accidents occurred, some or all of these reasons might prevent the party entrusted with its delivery from seeing the supervisors in a body, or all three separately, and if so, such a rule would defeat the purpose of an independent ticket. This very case proves our contention. This certificate was not fully completed until October 25th, and there was but one day prior to the tenth to deliver it in. What policy is to be subserved by requiring three to unite in the mere ministerial duty of receiving a paper; what action they shall take upon it after its reception is another proposition. In this they act as a board.

The provision of sec. 38 requiring each signer to state his residence, occupation and place of business, is solely for the identification of the signer. If some of the signers have no places of business, they can be identified by their names and residence.

JONES, J., delivered the opinion of the Court.

This case came before the Court below upon a petition for *mandamus* filed by the appellant in which he alleged that he was a citizen, taxpayer and qualified voter of Prince George's

County, in the State of Maryland, and was a duly nominated candidate of the Republican party for the office of County Commissioner of said county at the general election occurring in the year 1901; that the appellees compose the Board of Supervisors of Election for said county; that on the 26th day of October, 1901, one of the said supervisors produced at a meeting held by the board on that day, what purported to be a certificate of nomination, otherwise than by a convention or primary election, of candidates to be placed upon the official ballot to be voted for at the election held on the 5th of November, 1901, and stated that the said certificate had been delivered to him at his place of residence on the night of the 25th of October, 1901; that said purporting certificate of nomination was never filed in the office of the said Board of Supervisors of Election before the forenoon of the 26th of October, 1901, at about ten o'clock; that said certificate was not so filed "ten days before the general election for the year 1901"—the day for holding said election being the 5th of November of that year; that therefore the said Board of Supervisors "had no right or power to treat the said pretended certificate of nomination;" if "otherwise in proper form, as a valid certificate of nomination;" nor to print the names of the persons purporting to be nominated by said certificate upon the official ballot to be used at the then approaching election of the 5th of November, 1901; that said certificate was "signed in the manner required by law, by at the most not more than 179 of the voters of Prince George's County" as appears upon the face thereof; that said Board of Supervisors had voted to place the names of the persons nominated by said certificate upon the aforesaid official ballot, "claiming * * that they can lawfully count in order to make up the 200 voters required by law, the signatures of certain persons" to said certificate "who do not append to their respective signatures their respective places of business as required by law;" that the printing of the names placed in nomination by the said certificate upon the official ballot would add to the cost of printing the ballot and entail loss and expense upon the

"petitioner in common with the other taxpayers of the said county;" that printing the names upon the official ballot would "tend to confuse and mislead the voters" and "increase unjustifiably and without warrant of law the trouble which it will give to each of the voters of said county in marking their ballots, and will increase the danger of all of said ballots, being improperly marked and therefore rendered void;" that the party designation selected by the signers of the aforesaid certificate was "Reform Republican" and the said Board of Supervisors had resolved to print such designation on the official ballot after the names of the persons purporting to be nominated by the said certificate; that the petitioner as the duly nominated candidate of the Republican party had had his nomination certified to the Board of Supervisors and his name would be printed upon the official ballot as such candidate; that the party designation adopted by the signers of the said certificate "is so nearly similar to that of the Republican party of which" the petitioner was a candidate that there was "a peculiar danger that the printing upon the official ballot of the names" of the persons nominated upon the aforesaid certificate as "Reform Republican" would mislead the voters and would especially abridge, interfere with and encroach upon the rights of the "petitioner and other candidates of the Republican party in said county;" that the object of many of the persons who signed the said certificate was to confuse the voters; that many of these persons were avowed supporters not of the persons nominated by the said certificate, but of the regularly nominated candidates of the Democratic party; that said persons, some of whom are named and are alleged to have relations, political, personal and professional with candidates on the Democratic ticket, did not intend to support or vote for the persons nominated by the said certficate and did not so intend at the time they signed the same; that the only purpose of preparing and filing said certificate was to confuse the voters and to secure a majority for a political party opposed to the petitioner; and that the said "pretended" certificate of nomination was a fraud, had been obtained by fraud,

and the only object and purpose thereof was "to perpetrate a fraud upon the duly qualified and legal, registered voters of Prince George's County."

The petition then alleges that by reason of the facts set out the said certificate of nomination is void and of no effect and prays that a writ of *mandamus* may issue "commanding" the appellees "the Board of Supervisors of Prince George's County * * to treat said pretended certificate of nomination as insufficient, ineffective and void, and to omit the names of all persons so nominated by said pretended certificate of nomination from the official ballot to be used at the next general election held in this State on November 5th, 1901." The certificate of nomination referred to in the petition was filed under secs. 38 and 42 of Art. 33, title, Elections of the Code. A demurrer was entered to the petition by the appellees which was sustained and the petition dismissed. The petitioner brings this appeal for reversal of this action of the trial Court. If this Court should find that there was error in the judgment of the lower Court when rendered, the futility of reversing the judgment and ordering the writ of *mandamus* now is obvious. The petitioner could thus be afforded no redress for what he complains of, either in his capacity of taxpayer and voter, or as a candidate for office at the late election. All of the expenses from the burden of which the petitioner as taxpayer asks to be protected have long since been incurred and most probably paid, and relief in this regard is beyond the reach of a writ of *mandamus*. In his capacity of candidate for office at the late election the writ, if issued now, would be quite as ineffective and useless. If he was successful at the election, then he has not sustained the injury which it was the design to avoid in making application for the *mandamus*. If he was unsuccessful he must necessarily now be remitted to other remedies for proper and effective redress.

Nor, if we assume that the petitioner has, as a citizen and voter, a standing in Court in this proceeding, to subserve a public interest by pursuing the remedy here invoked, could any such interest be subserved by the issuing of the writ in

present conditions. In every aspect, therefore, in which the case is presented to the Court upon this appeal the ordering of the writ would be entirely nugatory. This of itself is a sufficient reason for not disturbing the judgment of the Court below refusing the writ. This was distinctly ruled by this Court in the case of *Wells et al.* v. *Hyattsville*, 77 Md. 125, where although this Court found that the action which it was there sought to compel the public officials, against whom the proceeding was directed, to take, was the action they ought to have taken and that the action they actually took and which was complained of, was illegal and void, it affirmed the judgment of the lower Court upon the ground that to order the writ then would be nugatory—the Court closing the opinion, which was delivered by the present Chief Justice, as follows, "the order dismissing the petition will be affirmed, *only* because it is now too late to direct a *mandamus* to issue." This case followed and applied the previous ruling of this Court in the case of *State ex rel.*, *O'Neill* v. *Register et al.*, 59 Md. 283, where it was said (p. 289): "It (the writ) is never granted when it will be nugatory. It will always be refused by the Court if it be manifest that it must be vain and fruitless, and can have no beneficial effect."

But aside from this could the application for a *mandamus* in this case have been properly granted upon the allegations made and in accordance with the prayer of the petition? In the case of *Wailes* v. *Smith, Comptroller*, 76 Md. 469 (pages 476–477), this Court said "it can hardly be necessary to say that a *mandamus* is a mandatory writ" and that "it only lies to enforce the performance of a strictly ministerial duty. And by 'ministerial' we mean where one is entrusted with the performance of an absolute and imperative duty the discharge of which requires neither the exercise of official discretion nor judgment." Then after alluding to the conflict of opinion "as to what constitutes, strictly speaking, a *ministerial duty* as distinguished from a *discretionary duty* within the meaning of the rule," the late CHIEF JUSTICE ROBINSON who delivered the opinion said, "we take it to be settled by the best considered

cases, that where the duty is such as necessarily requires the examination of evidence and the decision of questions of law and fact, such a duty is not ministerial, and not being ministerial, the decision of a public officer to whom the discharge of such duty has been confided cannot be reviewed or reversed in a *mandamus* proceeding." In support of the principle thus enunciated the leading case of the *United States* v. *Seaman*, 17 Howard, 230, is cited and relied upon. To the same effect are the later cases of *Brown* v. *Bragunier*, 79 Md. 234, and *State ex rel.* v. *Latrobe et al.*, 81 Md. 222, in both of which it was said, "the remedy by *mandamus* is not one which is accorded *ex debito justitiæ*. The writ is a prerogative one ; and unless the right which the relator seeks to enforce is clear and unequivocal, and the correlative duty which the respondent refuses to perform is purely ministerial, and there be no other adequate remedy at law it will not be granted."

Without adverting to them more particularly it may be said that, very plainly, many of the allegations of the petition mention considerations with which the Court can have no possible concern in this proceeding—they being consequences that would result from, and considerations that would grow out of, the putting upon the official ballot any ticket nominated under the provisions of law which authorize and regulate the character and mode of nomination of a ticket such as the one in question, together with matters over which the law does not attempt to give any official control—at least not by any specific provision in regard to them.

Now does the petition here ask for the enforcement of a clear, unequivocal, ministerial duty ? And are the appellees imperatively required to perform what the petition asks that they be required to do ? As has been seen the petition does not ask that the appellees be commanded to perform any act. It asks that they be restrained from doing an act which it is alleged they have "voted" to do—and that, as a basis for them to be so restrained, they be required to render a particular judgment, to-wit : To hold that the certificate of nomi-

nation mentioned in the petition and here in question is "insufficient, ineffective and void." The very statement of such a proposition is sufficient to show that the prayer of the petition is not within the appropriate function of a *mandamus*. When the certificate of nomination which is the subject of this controversy was presented to the appellees for their official action thereon if it was a purely ministerial duty they had to perform and they were without any discretion in the premises there was but one thing they could do, which was to place the names of the persons nominated in the certificate upon the official ballot; and this as the petition alleges they purposed to do. The petitioner in asking them to reject the certificate of nomination must have done so upon the theory that the appellees had a discretion to either receive or reject the certificate and therefore must of necessity pass judgment upon its sufficiency and legality. The petition therefore works its own refutation, for if the appellees must or could exercise judgment or discretion in deciding whether to receive or reject the certificate of nomination, very plainly the Court cannot control that judgment and discretion by *mandamus*. The most the Court could do would be to compel them to the exercise of the official judgment in obedience to the duty imposed by law, which in this case they have done; it could not direct them what that judgment should be or that they should render any particular judgment.

When the appellant, as shown by his petition, urged upon or presented to the appellees various grounds upon which he asked for the rejection of the certificate of nomination in question, it cannot be pretended that the appellees could or ought to have rejected the certificate merely because these grounds were alleged. It was required of them to judge of the sufficiency of the grounds as a basis for the action which the appellant asked to be taken. Without again repeating them it is apparent from the recital already made of them that judging of their sufficiency involved inquiry into and judgment upon questions both of law and of fact. That judgment having been exercised with a result adverse to the petitioner, this proceed-

ing designed to obtain from the Court a review and reversal
of the decision rendered by the appellees is in effect an appeal
from the supervisors to the Court; and an attempt to substi-
tute the Court to the duty of the Supervisors of Election.   For
the reasons given it seems very clear that the petition of the
appellant showed no case for a *mandamus;* and the action of
the lower Court in sustaining the demurrer and dismissing the
petition was the proper disposition of the case.

The appellant is not helped in this case by the principle of
pleading that a demurrer admits the facts stated in the plead-
ing against which the demurrer is directed.   It is only facts.
that are well pleaded that are admitted and given effect against
the demurrer.   Here, if the views that have been expressed
are correct the facts set out in the petition were not material
in that they did not make a case within the cognizance of the
Court.   *Brooke* v. *Widdicombe,* 39 Md: 400; *Devin* v. *Belt,* 70
Md. 355; *Brayshaw* v. *Ridout,* 79 Md. 454.

It was suggested at the argument that though this Court
might feel constrained to affirm the action of the trial Court,
yet it might proceed to give its construction of the provisions
of the election law which authorize and regulate the making
of nominations of the kind involved in this controversy.   It is
with reluctance that this Court will in any case undertake to
indicate an opinion as to the questions which are not strictly.
before the Court upon the record and demanding a decision.
Sound practice requires that this should be done with caution
and only under circumstances making it of some real import-
ance or necessity.   There can scarcely be propriety in doing
so in a case, such as this is found to be, where the jurisdiction
of the Court from the inception of the proceedings has been
irregularly and inappropriately invoked.   In this connection
there is this further consideration in the case before us.   The
names of the persons who were placed in nomination to be
voted for at the late election by the certificate of nomination
in question were printed upon the official ballot, and the per-
sons were presumably voted for at the election with what re-
sult as to themselves or effect upon others whose names were

also on the ballot to be voted, the Court is not informed. If the Court should here indicate its opinion that the names of such parties were properly printed on the official ballot it would be undertaking to determine for them rights which they are not before the Court asking to have passed upon. On the other hand if the Court should express the opinion that the names referred to were not properly placed upon the ballot to be voted for it would then undertake to decide adversely as to rights and status of parties who are not before the Court to be heard. There would seem to be manifest propriety in leaving the parties concerned to pursue appropriate remedies for such wrongs and grievances as they may believe and be able to show they have suffered.

The order appealed from in this case will be affirmed with costs to the appellees.

*Order affirmed with costs to the appellees.*

(Decided March 5th, 1902.)