DeCOURCY W. THOM et al. *vs.* JOHN R. COOK et al., THE BOARD OF SUPERVISORS OF ELECTION OF QUEEN ANNE'S COUNTY.

*Elections and Voters—Appeal from Order Relating to Nomination of Candidates After Holding of Election— Moot Question.*

Plaintiffs filed a bill asking a Court of Equity to enjoin the Supervisors of Elections of a county from placing on the official ballot, to be used at an approaching election, the names of certain persons nominated for office by certificate,

upon the ground that the persons signing the certificate were not entitled to do so under the statute relating to nominations. From the decree of the lower Court dismissing the bill, the plaintiffs entered an appeal more than a month after the election had been held and seven weeks after the decree was passed. *Held,* that, even if it be assumed that a Court of Equity has jurisdiction in the premises, still no relief can now be granted or result achieved by any order of this Court, and no further proceedings could be had upon a remand of the cause, and that, since a mere moot question as to the construction of the statute is involved, the appeal will be dismissed.

*Decided March 31st, 1910.*

Appeal from the Circuit Court for Queen Anne's County (PEARCE, C. J., HOPPER and ADKINS, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Archibald H. Taylor* and *John Peirce Bruns* (with whom was *Jas. T. Bright* on the brief), for the appellants.

*Alonzo D. Miles* (with whom was *J. H. C. Legg* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree dismissing a bill in equity which sought to enjoin the appellees from printing upon the official ballot, to be used at the election to be held on November 2nd, 1909, the names of certain persons who had been certified to them as nominees of what was called the "People's Party" for the House of Delegates, and for Sheriff and County Commissioners of Queen-Anne's County. The bill was filed by DeCourcy W. Thom, a candidate of the "Independent Citizens' Party" for the House of Delegates, who sued in his own behalf, as such candidate, and as a citizen,

voter and taxpayer of that county, and J. Louis Evans who sued in his own behalf as a citizen, voter and taxpayer— both suing on behalf of the other candidates of said party and also of all citizens, voters and taxpayers who were entitled to vote and whose property might be affected by the election.

The defendants (appellees) constitute the Board of Supervisors of Elections of that county. The bill alleges that on or about the 16th day of October, 1909, an alleged certificate of nomination of candidates for the above mentioned offices, purporting to be under the provisions of Chapter 202 of the Acts of 1896, was filed with the defendants, as said Board of Supervisors. The ground relied on in the bill is that out of three or four hundred persons who signed the certificate, less than two hundred were persons who had not joined in the nomination of more than one nominee for each of said offices to be filled at said election, but that on the contrary nearly all of them had previously, directly and personally joined in nominating candidates of the Democratic Party for each and all of said offices to be filled at said election, by participating in the Democratic primaries held for that purpose, under what is known as the Crawford County system. The bill then specifically alleges that the certificate of nomination is illegal and void, because contrary to the Acts of the General Assembly of Maryland, to wit: Section 44 of Chapter 202 of the Acts of 1896. It doubtless meant section 44 of Article 33 of the Code, which was section 40 of the above Act. The portion of it especially relied on is that "no person shall join in nominating more than one nominee for each office to be filled."

We were earnestly urged by the appellants to construe that section, regardless of what disposition we might make of the case, but we do not deem it proper under the circumstances to do so. It is now purely and distinctly a moot question. The election was held on the 2nd day of November, 1909, and this appeal was not even taken until December 10th, 1909—over a month after the election was held, and seven weeks after the decree was passed. The persons nomi-

nated by the certificate are not parties to the cause, and no rights could be determined by us which could be enforced in these proceedings.    In *Mills* v. *Green,* 159 U. S. 651, the Supreme Court of the United States said: "The duty of this Court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law, which cannot affect the matter at issue in the case before it.    It necessarily follows that when, pending an appeal from the judgment of the lower Court, and without any fault of the defendant an event occurs which renders it impossible for this Court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the Court will not proceed to a formal judgment, but will dismiss the appeal."    In *Jones* v. *Montague,* 194 U. S. 147, where there was a petition for a writ of prohibition, the Court said: "But * * * the thing sought to be prohibited has been done, and cannot be undone by any order of Court.    The canvass has been made, certificates of election have been issued, the House of Representatives (which is the sole judge of the qualifications of its members) has admitted the parties holding the certificates to seats in that body, and any adjudication which this Court might make would be only an ineffectual decision of the question whether or not these petitioners were wronged by what has been fully accomplished.    Under those circumstances there is nothing but a moot case remaining, and the motion to dismiss must be sustained."    In *Selden* v. *Montague,* 194 U. S. 153, where there was an application for an injunction, the same course was adopted.    See also *Syfer* v. *Spence,* 103 Md. 66, where it was said: "There is therefore no substantial question in this case to be passed upon, and a decree to restrain the board would be nugatory. The appeal will be dismissed."    Other cases in equity might be cited but we deem it unnecessary.

In *Duvall* v. *Swann,* 94 Md. 608, which was an application for a mandamus against Supervisors of Elections to re-

quire them to treat a certificate of nomination as insufficient and void, and to omit the names of all persons nominated by it from the official ballot, this Court was asked to give its construction of the provisions of the Election laws, which authorize and regulate nominations of this kind, but JUDGE JONES, speaking for the Court, said: "The names of the persons who were placed in nomination to be voted for at the late election by the certificate of nomination in question were printed upon the official ballot, and the persons were presumably voted for at the election with what results as to themselves or effect upon others whose names were also on the ballot to be voted, the Court is not informed. If the Court should here indicate its opinion that the names of such parties were properly printed on the official ballot it would be undertaking to determine for them rights which they are not before the Court asking to have passed upon. On the other hand if the Court should express the opinion that the names referred to were not properly placed upon the ballot to be voted for, it would then undertake to decide adversely as to rights and status of parties who are not before the Court to be heard. There would seem to be manifest propriety in leaving the parties concerned to pursue appropriate remedies for such wrongs and grievances as they may believe and be able to show they have suffered."

If we differed with the Court below, we could not reverse the decree and remand the cause for further proceedings, for the simple and plain reason that no further proceedings could be taken in it, and if we concurred with that Court our judgment would be of no avail to the parties. As was also said by JUDGE JONES in the above case: "It is with reluctance that this Court will in any case undertake to indicate an opinion as to the questions which are not strictly before the Court upon the record and demanding a decision." That is particularly so when some who might be affected by our construction are not parties to the proceedings.

Then again there are other questions which we would have to determine before we could reach the construction of the

statute. Whether or not a Court of Equity has jurisdiction to determine political controversies is one of as much public importance as the construction of the statute, for the consequences of granting an injunction prohibiting the names of those who have been nominated by a certificate, which is on its face in conformity with law (as this one is in effect conceded to be), from being placed on the official ballot may be more injurious and far reaching than even placing some on which ought not to be on, for usually the parties affected by such an injunction could not have a hearing in time to have their rights established before the election. That is well illustrated by the case of *Annapolis* v. *Gadd et al.,* 97 Md. 734, -where an injunction was erroneously granted prohibiting the names of all the candidates of one political party from going on the ballot, and the decree was unanimously reversed by this Court. If it had not been for the fact that the members of this Court happened to be in Annapolis delivering opinions, and had not completed their work for the term as early as usual, the names of those candidates could not have been placed upon the ballot, although we said, after passing on the other question in the case: "But apart from all this it is quite obvious that a Court of Equity has no jurisdiction to issue an injunction to restrain the City Clerk from putting on the official ballot the names of the parties mentioned in the certificate filed June 29th." Other cases which at least tend to sustain the view that a Court of Equity has no jurisdiction to give such relief are *Hardesty* v. *Taft,* 23 Md. 513; *Hamilton* v. *Carroll,* 82 Md. 326; *Fletcher* v. *Tuttle,* 151 Ill. 41, S. C. 25 L. R. A. 143, note to *Shoemaker* v. *Des Moines* (Iowa), as reported in 3 L. R. A. N. S. 382, where many cases, including *Hardesty* v. *Taft,* and *Annapolis* v. *Gadd et al.,* are cited. If that principle should be held to be settled as a general rule, then the further question would arise as to whether it must be applied if fraud be alleged and proven, but as to that we would again be met by the fact that in this case all fraud was distinctly denied in the answer of the defendants, and there was no testimony taken.

As this Court decided in *Wells* v. *Munroe,* 86 Md. 443, and *Sterling* v. *Jones,* 87 Md. 141, that under the Act of 1896, the Supervisors had no discretion as to what names should be placed upon the ballot, if certified to them in conformity with the statute, but "it is their plain duty to place the names certified to on the ballots; and all ballots shall contain every such name," we would be required to determine whether these supervisors had any power to consider such questions as the bill alleges. CHIEF JUDGE MC-SHERRY said in *Sterling* v. *Jones, supra*: "The practice followed in this case, if tolerated by the statute, or by any fair construction of the statute, would open the way to flagrant frauds upon the rights of candidates, and would convert the supervisors into a tribunal clothed with judicial functions, and this the Act of Assembly never designed to make them." It is not difficult to imagine what may be the result in some instances if they have the power to refuse to put names on the ballot, because under their construction of the provisions of the statute they are not entitled to be placed on it.

Another reason which we might give for not now passing on the statute is, that even if we adopted the appellant's construction of it, it would not necessarily prevent the wrongs complained of in future cases. It would doubtless make it more inconvenient, and probably more difficult to get the requisite number of signers, but that construction, if adopted, would only prevent those who had already joined in nominating candidates for the same offices from signing such certificates. It would not prevent others from signing them.

It is true that we have sometimes expressed our views on public questions although we dismissed the appeals, but it is a practice which ought not to be followed except in very rare cases, if at all, and certainly should not be in a case like this where the appeal was taken over a month after the time had passed when any effective relief could be granted, even if it be assumed that a Court of Equity had jurisdiction, and where those whose names were sought to be kept off the ballots by injunction are not parties to the bill. Courts must

unhestitatingly protect the rights of parties to political controversies as well as others, when properly called upon to do so, but they should not invite such cases by showing a readiness to pass on questions raised, even when they have no power to render an effective judgment or decree.

It cannot properly be said that the effect of the disposition we make of this case is that there is no remedy against Supervisors of Elections, although their conduct is alleged to be corrupt or fraudulent, for if there be remedy under section 94 of Article 33, or otherwise, it would not necessarily depend upon the construction of section 44, but upon the question whether they were guilty of corrupt or fraudulent conduct or practice in the performance of their duties, or, in some cases, of wilful neglect of duty. Nor are we called upon to now determine whether those who sign certificates of nomination, if signed for such purposes as alleged by the appellants in this case, can do so with impunity, regardless of the construction to be placed on section 44. But as no relief could be granted by us on this appeal for reasons given above, it will be dismissed, without expressing our views on the construction of that section, as we are satisfied that is the proper course for us to pursue.

*Appeal dismissed.*