## TAWNEY *v.* BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE CITY

[No. 9, October Term, 1951 (Adv.).]

*Decided, per curiam, April 26, 1951.*

*Opinion filed May 24, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MAR-KELL, JJ.

*Hyman A. Pressman,* with whom was *R. Palmer Ingram* on the brief, for the appellant.

*J. Edgar Harvey, Deputy Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

On March 12, 1951, appellant filed with the appellees, the Board of Supervisors of Elections of Baltimore City, a certificate of nomination as an independent candidate for the office of City Comptroller of Baltimore City. This certificate was filed under the provisions of Section 39 of Article 33 of the Annotated Code. By the terms of that article, when the nomination is for an office to be filled by an election to be participated in by the voters of the City of Baltimore, the number of signatures required on a nominating petition is not less than 1,500.

The appellant claims that at the time he filed his certificate, he thought there were 1,952 signatures upon it, but when these signatures were counted by appellees about four weeks later, there were only 1,796 signatures. The certificate was admittedly in proper form under the provisions of Section 39, and the only question raised by the appellees with respect to it was that they could identify only 1,269 names as those of registered voters of Baltimore City. Appellant attempted to check the 527 names which were not identified by the appellees, and was able to find 70 of these which appeared to be the signatures of registered voters. He claims he did not have time to go further, and, on April 14, 1951, the appellees rejected his certificate of nomination because it was still 161 names short of the requisite 1,500, according to the information in their office.

The appellant thereupon filed his petition for *mandamus* in the Superior Court of Baltimore City, to require the appellees to include his name on the ballot in the election to be held on May 8, 1951. The appellees answered this petition, asserting that their investigation of the qualifications of the signers of the certificate was in keeping with their duties, and that their rejection of the certificate, because of the lack of the signatures of sufficient qualified persons, was not unlawful or arbitrary. After a hearing, including the taking of testimony, the court stated that so far as it appeared from the evidence, making all allowances, the certificate was 160 names short of the required number of registered voters, and, for that reason, the petition was dismissed. An appeal was taken here, and we advanced the case and heard it on April 26, 1951. After hearing, on the same day, we passed a *per curiam* order reversing the order of the lower court and directing that the *mandamus* issue as prayed. The reasons for our action are now given.

Section 39 of Article 33 has been a part of the election laws of the State at least since the Act of 1896, Chapter 202, in which it was Section 38. The certificate provided

by that section, for nominations to be made otherwise than by a convention or primary election, has to be signed by voters "residing in the political division in and for which the officer is to be elected", and, as we have already stated, in the case of an office to be filled by an election to be participated in by the voters of the City of Baltimore, the number of such signatures must be not less than 1,500. By Section 62 of Article 33, it is now provided that it shall be the duty of the Boards of Supervisors of Elections to provide ballots or voting machines on which they are to print the names of every candidate whose name has been certified to or filed with them in the manner provided for in the elections article. This was originally Section 49 of the Act of 1896.

In the case of *Wells v. Munroe*, 86 Md. 443, 38 A. 987, 988, decided *per curiam* October 20, 1897, and the opinion filed December 1, 1897, the question was whether a nominee for clerk of the Circuit Court for Anne Arundel County should be placed upon the ballot. The Supervisors of Elections refused to do so, contending there was no vacancy. The nomination was not made under Section 39 (then 38), but the court decided that the appellant's name should be placed upon the ballot under Section 62 (then 49), saying: "It is manifest it was not the purpose to invest the Supervisors with any discretion as to what names should be placed upon the official ballot. * * * Where the nominations come to the Supervisors, from the proper sources, certified in the proper manner, as the law provides, it is their plain duty to place the names certified to on the ballots; and all ballots shall contain every such name."

In *Sterling v. Jones*, 87 Md. 141, 39 A. 424, 425, which was decided October 30, 1897, the Supervisors of Elections of Somerset County had received a certificate of nomination for county offices signed by more than 200 voters of the county, which was the number then required. Subsequently, 70 of these parties signed a withdrawal paper. Thereupon the majority of the Supervisors held that this withdrawal left the nomination

certificate without 200 signatures, and declined to place the names of the persons so nominated on the ballot. The circuit court for the county directed a *mandamus* to issue, compelling the names to be placed upon the ballot, and, on appeal, this order was affirmed by this court. Chief Judge McSherry, who wrote the opinion, stated: "The Act of 1896 contemplates no such proceeding as is here relied on. When the nomination certificate is filed, if it conforms to the requirements of the statute the plain and obvious duty of the Supervisors under *sections 49 and 50* of the same *Act of 1896,* is 'to cause to be printed on the ballot the name of every candidate whose name has been certified to or filed with' them; and there is no provision whatever authorizing them to receive, consider or act on any withdrawal paper, except a withdrawal by a candidate who has been actually nominated. Certainly there is no authority for the Supervisors, at the request of any one, to erase names from such a certificate. The practice followed in this case, if tolerated by the statute, or by any fair construction of the statute, would open the way to flagrant frauds upon the rights of candidates, *and would convert the Supervisors into a tribunal clothed with Judicial functions,* and this the Act of Assembly never designed to make them." (Emphasis supplied.) And then, with respect to the argument of the majority of the Supervisors: "The contention is at war with the whole policy of the law, which entrusts to these ministerial officers no discretion; but imposes upon them an imperative duty to place on the ballot the names of the persons nominated in any one of the three modes designated in the Act of 1896."

In the case of *Duvall v. Swann,* 94 Md. 608, 51 A. 617, 619, decided in 1901, a citizen, taxpayer and qualified voter of Prince George's County, who was also a duly nominated candidate of the Republican Party for the office of county commissioner, filed a petition for a writ of *mandamus* to compel the Supervisors of Elections of the county not to place upon the ballots the names of

certain persons who had filed for office as "Reform Republicans". It was alleged that the certificate contained only 179 voters who signed in the manner required by law, but the Supervisors counted in addition certain signatures of persons who did not append thereto their places of business, and thus made up the total of 200 then required, and placed the names upon the ballot. The trial court refused to issue the writ, and, on appeal, this court affirmed that order. It was stated in the opinion that it would be obviously futile to reverse it in any event because the election had already been held, but, nevertheless, the court went into the facts of the case and said: "When the certificate of nomination which is the subject of this controversy was presented to the appellees for their official action thereon if it was a purely ministerial duty they had to perform and they were without any discretion in the premises there was but one thing they could do, which was to place the names of the persons nominated in the certificate upon the official ballot; and this as the petition alleges they purposed to do." The court then went on to say that the petition worked its own refutation, because if the Supervisors had discretion, then that discretion could not be controlled by *mandamus*. The court did not decide in that case whether the Supervisors had discretion or not in the matter, but specifically declined to pass upon these questions because the case was moot.

In the case of *Thom v. Cook*, 113 Md. 85, 77 A. 120, 122, a bill in equity was filed to prevent the Supervisors from printing on the official ballot the names of certain persons who had been certified as nominees of the "People's Party" for the House of Delegates, and for certain county offices. The certificate of nomination of these parties contained the names of 300 or 400 persons, but it was alleged that less than 200 were persons who had not joined in the nomination of more than one nominee for each of said offices, but that on the contrary, nearly all of them had joined in nominating candidates in the Democratic primaries. The court below dismissed the

bill. When the case reached this court, it was held to be moot, but the court quoted *Wells v. Monroe, supra,* and *Sterling v. Jones, supra,* to the effect that the Supervisors had no discretion, but it was their plain duty to put the names certified to them on the ballots, and, after quoting part of what we have heretofore quoted from Chief Judge McSherry's opinion in the last mentioned case, the court, speaking through Chief Judge Boyd, said: "It is not difficult to imagine what may be the result in some instances if they " (the Supervisors) " have the power to refuse to put names on the ballot, because under their construction of the provisions of the statute they are not entitled to be placed on it."

In *Soper v. Jones,* 171 Md. 643, 187 A. 833, 835, a citizen, taxpayer and registered voter of the Fourth Congressional District filed a bill in equity to restrain the Secretary of State from certifying to the Board of Supervisors of Elections of the city the name of a candidate for the United States Congress for that district. The bill was dismissed and this was affirmed on appeal. The candidate whose name was sought to be kept from the ballot was not nominated by party convention, but had filed with the Secretary of State a certificate of nomination signed by 2,393 names. It was held that although Section 51 of Article 33 (now Section 39) required that the signers should be voters residing in the congressional district, 1,347 out of the 2,393 were not registered at the addresses given as their residences. The court, speaking through Chief Judge Bond, said: "It is found sufficient as a reply that, in the opinion of the court, the statute is intended to require only that signers of certificates for candidates for Congress shall reside in the congressional district, and that the affidavits attached shall state that they are residents in the district. The statute must contemplate changes of residence within the district during the period covered by registration, and the fact that 1,347 persons are not now residents at the addresses given on the registration books is not of itself indicative of residence outside the district." It

was also stated that a majority of the signers failed to state their business addresses, and over one-third failed to state their occupations. The court said as to this: "The statements, if given, would aid in determining whether the signers are to be counted within the purpose of the statute, and would facilitate detection of frauds. But they are not the sole reliance for assurance of the qualifications of the signers, for affidavits that they are voters in the district are to be furnished. If the statements to be appended to the respective signatures should be essential, then one accidental omission from a petition of exactly 1,500 names would render the whole a nullity. And this would seem to be a result out of proportion to the purpose and importance of the certificate to be issued, which is not to have the final effect of electing an officer, but only that of procuring the printing of his name on the ballot for the voters to dispose of as they choose." The court quoted from a Kansas case: " 'The people, on election day, will vote only for the candidates of their choice, and are not likely to be seriously misled by any fraudulent * * * nomination. On the other hand most deplorable consequences might ensue if contentions over the regularity of nomination papers are to be prolonged past the time when the officers charged with the duty of certifying to nominations, and causing ballots to be printed, are required by law to act in preparing for the election.' " *Simpson v. Osborn*, 52 Kan. 328, 34 P. 747, 749.

There are three opinions by the Attorney General's Office which hold that the duties of the Secretary of State in passing upon certificates of candidates are purely ministerial, and, when such certificates are regularly and duly certified to him, he must transmit the names and descriptions of the candidates to the several Boards of Election Supervisors. These are the opinions of Attorney General Ritchie, 1 Opinions, Attorney General 87, Attorney General O'Conor, 21 Opinions 350, and of Deputy Attorney General Henderson, 24 Opinions 297. The Legislature has amended Section 39 at least three

times since the first of these opinions was given, and has made no change in the duties required of the Supervisors or the Secretary of State. It may therefore be assumed that the Legislature has acquiesced in the contemporaneous construction of the statute by the Attorney General's Office. *Vaughan v. Boone,* 191 Md. 515, 62 A. 2d 351. In the opinion of Attorney General O'Conor, above referred to, this construction is stated in the following words: "In my judgment the Secretary of State is merely a ministerial official of the State government and does not possess judicial functions. He is in a position analogous to that of a board of supervisors of elections in that he must certify to go on the ballot such nominations as are duly filed in his office. If a nomination appears valid on its face and is in the regular form, and if the signatures on a nominating petition add up to the requirements of the statute, then in my opinion the Secretary of State has discharged his duty in the premises. He is not required to check the existence, residence or other qualifications of every signer of a petition, nor is he required to pass on legal questions which might be presented by the nomination."

The Supervisors of Elections, in our opinion, are in exactly the same situation with respect to those certificates of nomination which are filed with them as is the Secretary of State with respect to those filed with him. They must examine them to see if they are regular on their face and contain the requisite number of names. Beyond that they have no authority to go. Their duties are entirely ministerial, and, when they find the requisite number of names on a petition which is in all respects regular, their duty is to place the name of the candidate so nominated upon the ballot.

The Deputy Attorney General, in his oral argument, suggested possible situations which might result if this view is adopted in all cases, such as a certificate containing the signatures of a number of out-of-State residents who could thus nominate a local candidate, or a certificate on which all of the signatures appeared to be

in one handwriting. These questions may be met when they arise, but it might be observed that the out-of-State residents would have to state that they are residents of the State and of the subdivision, and the person getting the signatures would have to make oath that he knew each of the persons to be a registered voter. In the case of the signatures all being in one handwriting, the person securing them would have to make oath that he saw each of them sign. It may be concluded that the civil courts, either by way of mandamus, or by injunction, might prevent the Supervisors from placing on the ballot names of persons so nominated, and there would be also the imminent possibility of criminal action. None of these considerations, however, give the Supervisors of Elections any authority to pass upon such questions, which are essentially judicial in their nature. The Supervisors of Elections, while presumed to be impartial, are, in fact, political appointees, a majority of whom always belong to one or the other of the two major parties. It has been obviously the purpose of the Legislature not to permit such purely political bodies to be subject to the temptation of refusing to put on the ballot the name of someone whose candidacy might interfere with the wishes of the majority of the Board. The electors should have the fullest opportunity to vote for any candidates who may be nominated in accordance with our election laws, *Munsell v. Hennegan*, 182 Md. 15, 22, 31 A. 2d 640, 146 A. L. R. 660, and the Legislature did not intend that this right should be taken away by any action of a purely ministerial and political body, however good its intentions might be.

The Attorney General cites in support of the right of the Supervisors of Elections to investigate the residences of signers two cases from other jurisdictions. One is *In Re Murphy*, 189 App. Div. 135, 178 N. Y. S. 236, decided by the Supreme Court, Appellate Division, in New York. In that case, a certificate of independent nomination was filed with the Board of Elections in form provided by law, and contained the names of about 1,500

electors. The requisite number was 928. This case is a companion case to In *Re M'Grath*, reported in 178 N. Y. S. 231, and decided the same day. It refers to the *M'Grath* case. In the latter case, it appeared that the statutory provision was that the name of any person signing a certificate of independent nomination should not be counted unless such a person should be registered on one of the days of registration. The court, however, pointed out that by an amendment to the election law, the previous authority of the Board of Elections to pass upon objections filed to nominating certificates had been repealed, and now had to be determined by the Supreme Court, and said: "I think that the duties of the board of elections with respect to the receiving and filing of certificates of nomination are now wholly ministerial." And later: "The jurisdiction of the board, therefore, was limited to an examination of the face of the certificate of nomination and to counting the names of the nominators who registered." In the *Murphy* case, the court said that the duty of counting the number of nominators who had registered devolved upon the Board. It is obvious from these two decisions that the New York law requires that the signatures to a nominating petition must not only be those of voters and residents, as required in the Maryland law, but must also be registered, *and there is a specific provision that they shall not be counted unless they are registered.*

The other case is *States' Rights Democratic Party v. State Board of Elections*, 229 N. C. 179, 49 S. E. 2d 379, 388, decided in 1948 by the Supreme Court of North Carolina. Under the law of that State, when a new political party was desired to be created, at least 10,000 qualified voters had to sign a petition to the State Board of Elections. The court said, under this statute, the duty of determining whether the petition was in accordance with its requirements devolved, in the first instance, on the Board, and the performance of that duty necessarily required it to ascertain whether the petition had been signed by at least 10,000 qualified voters, and,

since an elector must be registered to be qualified, it was incumbent upon the Board to determine whether at least 10,000 of the signers were registered. Here too, however, by the statute, as construed by the court, the petition had to be signed by registered voters. The court did, however, quote an earlier case which it considered was relevant, to the effect that the duty of the Board in considering a petition for an election "is not discretionary but only ministerial", and it would seem that since the voters had to be registered, the court merely considered it a ministerial duty to check the names with the registration books to see if a sufficient number of registered voters had signed.

The question before us is different, and, under our statute, as heretofore pointed out, the qualification of signers is not that they shall be registered voters. We must, in any event, construe our statutes in accordance with our previous decisions, and not in accordance with those of other jurisdictions. There is no question that under these decisions, and under the consistent interpretations of the statute made by the Attorney General's Office, and not changed thereafter by the Legislature, the duty of the receiving election board, or of the Secretary of State, is only to see that the formal requirements of the statute are complied with, and that the number of names upon the certificate is sufficient.