STATE *ex rel.* J. T. REYNOLDS *v.* WILLIAM FIELDER *et al.*

(No. 6992)

Submitted March 3, 1931. Decided March 10, 1931.

*J. T. Reynolds* and *D. B. Dawson,* for relator.

*Charles Ritchie, Phillip H. Hill,* and *Fred O. Blue,* for respondents.

MAXWELL, JUDGE:

Relator, a candidate for Republican nomination for mayor of the city of Charleston, seeks a peremptory writ of mandamus to compel respondents, ballot commissioners of the city of Charleston, to prepare official Republican ballots for a proposed primary election to be held in the said city March 25, 1931, and to deliver such ballots and all other necessary supplies for use at said primary to the proper election officials designated by the council of said city for the holding of such primary election.

It appears from the petition and exhibits therewith that on the 9th of February, 1931, the Republican Executive Committee of the city of Charleston adopted a resolution providing for such primary election to be held March 25, 1931; that on the 10th of February, 1931, at an adjourned session of the council of the said city there was adopted an ordinance, the body of which reads: "That the Primary Election for the Nomination of Candidates for the elective officers of the City of Charleston, West Virginia, for the term of four

years commencing on the first Monday in May, 1931, and any convention or conventions for the nominations of such candidates, if any be held, in accordance with the laws and ordinances of the City of Charleston and State of West Virginia, be designated as Wednesday, March 25th, 1931;'' that immediately after the adoption of said ordinance, and on the same day, council appointed election commissioners and clerks to serve at such primary election at the respective voting precincts, the said appointments involving approval by the council of lists which were submitted by the Republican and Democratic committee chairman, respectively; that on the 11th of February the relator, relying upon the said resolution of the Republican Executive Committee which provided for a primary election, and upon the action of the city council just recited, formally filed his declaration of candidacy for the Republican nomination for mayor; that on the 22nd of February the Republican Executive Committee passed a resolution undertaking to rescind and revoke the resolution of February 9th calling for a primary election, and to recall and annul the list of persons theretofore selected to serve in said primary and certified to the council by the chairman of said committee, and further reciting that ''in the event no substantial change is made in the charter in the offices to be filled at the April election, the Committee is of the opinion that Republican candidates for council from the Republican wards should be selected at ward conventions,'' and that candidates for mayor, city treasurer, police judge, and five councilmen at large should be nominated at a city convention.

In a preamble of the resolution, in explanation of the action of the committee in rescinding the action of February 9th, it is recited that since the passage of said first resolution, there had been introduced in the legislature a bill proposing radical changes in the form of government of the city of Charleston, and that until the legislature has finally disposed of that matter there will be uncertainty as to the situation which will obtain with reference to an election in the city of Charleston in the spring of 1931.

Relator says that he would not have announced his candidacy for mayor if the above recited action of the Republi-

can Executive Committee of February 9th had not been taken, and if the ordinance of the city council of February 10th had not been passed; that candidates in good faith relied upon said matters and have made their campaigns in accordance therewith, and that they now "have vested rights in the manner of holding such election, and it would be in deroga- tion of these rights for the committee to be allowed to change the methods of choosing said nominees after all of this had been done," and that the later action of the Executive Com- mittee amounts to "taking from this petitioner, and all other candidates who filed with said city clerk, vested rights which have been granted to them by a previous resolution of the same body"; and that as a matter of public policy an Execu- tive Committee of a political party should not be permitted to reverse its action in the manner here presented.

The said ordinance of February 10th does not require that there be held either a primary election or conventions; it merely fixed the date for a primary and/or conventions as the case may be. The manner of the making of the nominations, thus not having been determined by the council, was neces- sarily left open for determination by the respective parties. True, the action of the council in appointing officials for a primary election clearly evinced the opinion of council that a primary election would be held, but the mere appointment of officials for a contemplated primary election in no wise binds the Executive Committee of either party to that pro- gram.

The present city charter, Acts 1929 (Municipal Charters) chapter 4, section 10, provides: "Candidates to be voted for at municipal elections may be nominated by convention, or primary election, as may be decided by the executive com- mittees of any of the parties recognized by law in said city, and candidates may be nominated by petition in the manner provided by chapter three of the code of West Virginia. Each of the political parties having the right to make a nomination under the election laws of West Virginia shall give notice of the manner of such nomination by publication thereof in some daily newspaper printed in the City of Charleston for ten days prior to the date of such convention or primary elec-

tion." Thus it is seen that the manner of making nominations for a political party shall be determined by the Executive Committee of that party, and it shall publish notice thereof for ten days prior to the date of such primary or convention. As a general proposition it would seem therefore that the notice that is published by the Committee is controlling. If this is true, why may not a Committee, prior to the ten day period of publication of notice, rescind a prior action and take a different one? Political committees have very broad powers in matters of party regulation; the courts respect that power and seldom find basis of justification for interference therewith.

"In absence of statute, courts do not exercise jurisdiction to interfere or control in matters purely political, pertaining to the management and proceedings of a political party." *Boggess* v. *Buxton,* 67 W. Va. 679. Other cases sustained this principle. *Committee* v. *County Court,* 68 W. Va. 113; *Kemp* v. *McDonald,* 64 W. Va. 323; *Smith* v. *County Court,* 78 W. Va. 168; *State* v. *Emmert,* 102 W. Va. 192; *Franklin* v. *County Court,* 86 W. Va. 479. This rule that the courts will not ordinarily interfere in the management of political parties is not peculiar to this jurisdiction; it is general. Courts "seek rather to maintain the integrity and independence of the several departments of the government by leaving questions of party policy, the regularity of conventions, the nomination of candidates, and the constitution, powers, and proceedings of committees, to be determined by the tribunals of the party." 20 Corpus Juris, p. 137. The case of *Franklin* v. *County Court, supra,* recognizes the right of a political committee to rescind an action and adopt another in regard to matters not completed. In the opinion, at page 483, the court said: "The power and authority of a statutory political committee to rescind, abrogate or alter, at a subsequent meeting, what it did at a previous one, before consumption, in the absence of a statutory provision inhibiting such action, cannot be doubted, and there is no such limitation upon the powers of such a committee in the statute of this state."

In the light of these principles the contention of relator that, having announced his candidacy and conducted his cam-

paign on the basis of a primary election as originally contemplated by the executive committee, he thereby acquired a vested right to have such program carried out is not well taken. He must be deemed to have known as a legal proposition that the committee had the right, for cause considered sufficient by it, to rescind its earlier action and adopt a different course.

There is probably no rule of law better established than that ''Clear legal right of the relator in mandamus to have performance of the act he seeks to coerce performance of, and plain duty to perform it, on the part of the respondent, are essential to the award of the writ.'' *Smith* v. *County Court,* 78 W. Va. 113. As demonstrated, those conditions do not exist here.

The writ of mandamus is refused.

*Writ refused.*