SUN CAB COMPANY *v.* WILLIAM W. CLOUD ET AL.
[No. 59, January Term, 1932.]

*·Decided April 15th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Isaac Lobe Straus* and *John A. Farley,·* for the appellant.

*Philip B. Perlman,* with whom were *Albert R. Stuart* and
*W. Howard Hamilton* on the brief, for William W. Cloud
and the Yellow Cab Company, appellees.

BOND, C. J., delivered the opinion of the Court.

The appellant, intervening as a defendant in a suit by the
appellees against the Secretary of State and the Board of
Supervisors of Elections of Baltimore City, has appealed
from the overruling of its demurrer to the bill of complaint
upon which the appellees seek a declaration that an act of
assembly is now in force and effect, notwithstanding the
signing and filing of petitions for a referendum and popular
vote upon it, and an injunction restraining the referendum.
The act is chapter 485 of the Acts of 1931, and by its terms
the operators of taxicabs in cities and towns having popula-
tions of more than 50,000 persons are required to obtain per-
mits from the Public Service Commission of the State, and
to take out liability insurance policies or give bonds to in-
demnify persons whom they might injure. And the bill of
complaint charges that the signatures attached to the peti-
tions for the referendum fall short of the constitutional re-
quirements, that many are forgeries, some of the names are
fictitious persons, others of persons who had died before the
time of signing, others still of persons who, though residents
in Maryland, lacked the requisite qualifications, and that the
petitions do not bear the affidavits required. The Secretary
of State and the Board of Supervisors of Elections appeared
and answered the allegations of the bill.

Although the act was to take effect as law, in regular
course, on June 1st, 1931, its provisions were not to become
operative until January 1st, 1932. The Constitution, art.
16, sec. 2, provides that, if before the 1st day of June there
shall have been filed with the Secretary of State a petition
to refer to a vote of the people any law capable of referendum
as provided later in the article, the law shall be referred to
the vote by the Secretary of State, and shall not become an
effective law until thirty days after approval by a majority
of the electors voting thereon. Section 3 of the article
fixes the requirements for referendum petitions. They must

be signed by 10,000 qualified voters of the state, and, if more than half but less than the whole of that number sign, and their signed petitions are filed with the Secretary of State before June 1st, the time for the law to take effect and for filing the remainder of the 10,000 signatures shall be extended to June 30th. Each form of petition signed must contain the affidavit of the person procuring the signature, that of his own personal knowledge each signature is genuine and *bona fide,* and that the signers are registered voters of the State, and of the city or county, as the case may be, set opposite their respective names. How it shall be ascertained whether these constitutional requirements have been met by petitions' filed, the referendum article has not prescribed. The bill of complaint avers that before and during the month of June forms of petitions bearing a total of more than 10,000 names, and pretended signatures, were filed in the office of the Secretary of State, but that upon investigation the alleged forgeries and frauds were discovered, and that in fact signatures in the number required, duly supported by affidavits, were never filed with the Secretary of State. Nevertheless, it is averred, as a result of the filing of the forms of petition, the act has so far been treated as suspended, its provisions have not yet been enforced, and the evils sought to be remedied by it have increased, to the detriment of the public, and also to that of taxicab owners and operators, including the complainants, who already conform to the requirements. The appellants sue as taxpayers, on behalf of themselves and any other taxpayers who may join as complainants, averring that, if the referendum should proceed upon the petitions so charged with fraud, the taxpayers will be put to wrongful expense for the publication of the referendum and the printing of it on the ballots of the next general election, in November of 1932. On these averments the interference of the court of equity by injunction has been sought, and a preliminary order has been passed declaring the petitions ineffectual for the purpose of suspending the operation of the act, and declaring the act to be in full force and effect, and a preliminary injunction has been ordered—

all subject to rescission and dismissal upon motion of the defendants.

The demurrer of the Sun Cab Company, filed after its admission as a defendant, raises chiefly questions of jurisdiction. There are four general contentions: (1) That a court of equity could have no jurisdiction to issue the injunction, because the limitation on its jurisdiction in respect to subject-matter, that is, limitation to the relief of civil or property rights, excludes the restraining of political and election officials in the holding of an election, or interference in the process of legislation, in which the referendum sought would constitute one step, and, in so far as there may be any remedy in respect to those subjects, it must be by the writ of mandamus, at law; (2) that the complainants have no right as taxpayers to the relief they seek, even if equity might assume jurisdiction of such a subject-matter, because they show no special injury distinct and peculiar to themselves; (3) that the Secretary of State, whose official residence is at Annapolis, cannot be sued, and cannot submit to be sued, in Baltimore City, and the court in Baltimore City cannot make its orders or decrees take effect outside of the city; and (4) that the bill of complaint is multifarious in combining the prayers for relief which it contains, both those as to subject-matter and those as to parties.

Counsel have given the court the benefit of exhaustive studies and reviews of decisions applying the principles argued on one side and the other. Some of those reviewed are not upon exactly analogous situations. In this case the subject of controversy is the claim or pretension of individuals who have signed and offered the petitions to a right to have an act of assembly submitted to the test of a popular vote. It is averred that the petitions are insufficient and the claim fraudulent, and the object of the suit is to prevent this action of private individuals from being given an effect to which it is not entitled if the averments of fact are true. The subject of controversy has some relation to a popular election or vote, some relation to performance of duties of administrative officers, and some relation to legislation. But

the attack is directly and principally upon the claim of the private individuals, the claim to a right to the use of the governmental processes. And that is essentially a judicial controversy, as the parties agree. The court is not asked to interfere in any discretionary performance of duties by officials; the officials would be, in this instance, only ministerial agents or channels for the proceeding which the proponents seek to initiate. Their relation, or the relation of the State as a whole, is at this stage only that of a passive medium; and it is appropriate that in such a controversy the private individuals or corporations making the claim to the referendum should be admitted as parties defendant. And the court, again, is not asked to interfere directly in an election or in the process of legislation; to repeat, it is rather asked to determine now whether private individuals are such as may, under the Constitution, require an election or popular vote, or interfere in the processes of legislation. And many of the decisions cited have dealt with controversies of a different kind, immediately connected with activities committed to the executive or legislative departments of the government.

It is, of course, true that the courts cannot invade the fields of government committed to the other departments, and consequently that they cannot, generally speaking, interfere to control the holding of elections, in the usual meaning of that term, or interfere in any part of legislation. *Hardesty v. Taft,* 23 Md. 512, 530; *Hamilton v. Carroll,* 82 Md. 326, 33 A. 648; *McCrary, Elections,* sec. 386; *High, Injunctions,* sec. 1250. But it is not true that equity can never interfere with the taking of a popular vote. The contrary is familiar, well-settled law. In *Graf v. Hiser,* 144 Md. 418, 125 A. 151, to take one of many illustrations available, this court held that an injunction should have issued to restrain a popular referendum to determine whether an act of assembly providing for a special taxing district in Prince George's County should take effect as law. The required preliminary notice had not been given in that case. And the injunction ordered was to restrain public officers, the "District Citizens

Committee," and the County Commissioners of Prince George's County, and was to interfere in legislation in so far as the popular vote constituted a step in the legislative process. *Brawner v. Supervisors,* 141 Md. 588, 603, 119 A. 250. So the County Commissioners of Montgomery County were held properly restrained from holding a special election, improperly called, to determine a question of a special tax levy and a bond issue for a county improvement provided for in an act of assembly. *Montgomery County Commissioners v. Henderson,* 122 Md. 533, 89 A. 858. Decisions to that effect have been numerous.

On the contention that, in so far as the controversy may be one which a court may adjudicate, it cannot be settled by an injunction issuing out of a court of equity, but must be dealt with under a writ of mandamus, at common law, we are unable to see why the principles followed in the cases just cited, those of *Graf v. Hiser* and *County Commissioners v. Henderson,* do not apply and control the decision. Against this view it is argued that the Maryland cases in which injunctions against popular votes have been issued have all been concerned with votes upon purely local improvements and tax burdens, and consequently with elections in restricted localities only. No Maryland case, it is urged, and few, if any, in other jurisdictions, have ever held that a court of equity might enjoin the holding of a state-wide election upon a question concerning the state as a whole. And the election required upon a referendum of the act now involved would be state-wide. But the fact does not, so far as we can see, afford any ground for distinction in the problem with which we are engaged. In that problem it seems to be a matter of indifference whether the project to be voted on is of state-wide concern or of only local concern. The governmental action in both cases seems to be the same in legal nature and quality, and the referendum sought and opposed seems to be substantially the same in both cases. The situation averred in the bill would be one pre-eminently demanding preventive interference, at suit of the proper parties, because stopping a false pretension to a right to a referendum is obviously

better done at the start than at some later stage in its career. Not only would expense then be saved, but wrongful immediate suspension of the legislative enactment, awaiting the time for an election, would be avoided. The original bill in this case was filed more than a year before the time for the election, so that, if the allegations are true, a year's wrongful suspension of the act might then have been avoided as an incident to an injunction denying any future effect to the petitions. This court has held that, by dint of repeated exceptions allowed to the general rule, the writ of mandamus in this state is one which may be resorted to in some cases for preventive relief (*Levering v. Supervisors,* 137 Md. 281, 286, 112 A. 301), but mandamus has not displaced injunction as the ordinary preventive remedy. *State v. Jarrett,* 17 Md. 309, 330; *Legg v. Mayor etc. of Annapolis,* 42 Md. 203, 226; *Hummelshime v. Hirsch,* 114 Md. 39, 47, 79 A. 38; *Board of Liquidation v. McComb,* 92 U. S. 531, 541, 23 L. Ed. 623; *Mechem, Officers,* sec. 997. Decisions in other jurisdictions on somewhat similar facts are not all in agreement, but there are many which agree in the views we here express, and which contain references to other decisions to the same effect. *Dennis v. Prather,* 212 Ala. 449, 103 So. 59; *Crawford v. Gilchrist,* 64 Fla. 41, 59 So. 963; *Mayor etc. of Macon v. Hughes,* 110 Ga. 795, 36 S. E. 247; *Moran v. Bowley* (1932) 347 Ill. 148, 179 N. E. 526; *City of Murray v. Irvan,* 170 Ky. 290, 185 S. W. 859; *Solomon v. Fleming,* 34 Neb. 40, 51 N. W. 304; *State v. Hall,* 35 N. D. 34, 159 N. W. 281; *Gilmore v. Waples,* 108 Tex. 167, 188 S. W. 1037; 2 *Joyce, Injunctions,* sec. 1386, etc. We conclude that the court of equity may be resorted to for an injunction against a referendum such as is sought here.

The objection that the complainants as taxpayers lack sufficient interest to bring the suit is answered to some extent by the conclusions just announced. If the subject-matter is at all within the cognizance of a court of equity, as we conclude it is, if that court may be resorted to for prevention of a popular vote which would be void because based upon insufficient petitions, then, according to the settled practice,

taxpayers interested in avoiding the waste of funds derived from taxation which would be involved in conducting the void referendum may make application to the court for the remedy. In the cases so far cited on the power of the court to deal with the subject-matter, as, for instance, in the Maryland cases of *Montgomery County v. Henderson*, 122 Md. 533, 89 A. 858, and *Graf v. Hiser*, 144 Md. 418, 125 A. 151, taxpayers have been the complainants to whom the remedy was given. And see *Ruark v. International Engineers' Union*, 157 Md. 576, 588, 146 A. 797. The property loss to them, or the loss of civil rights, which according to our rules must be established as a foundation for the interposition of a court of equity, may be small, when apportioned among them. Probably the loss to one taxpayer in any such proceeding seldom amounts to twenty dollars, the minimum of the debt or damage which a court of equity may consider. Code, art. 16, sec. 109; *Kenneweg v. Allegany County*, 102 Md. 119, 62 A. 249, 250. But, when a suit is instituted by one or more taxpayers in representation of all, the case is quite different. The amount involved and sought to be protected is then the total amount of loss to taxpayers, or the total amount which may be wrongfully expended. In *Kenneweg v. Allegany County, supra,* cited against the maintenance of the present suit, a single taxpayer was the complainant, and, as the court observed, he "does not sue in behalf of himself and other taxpayers who may be similarly situated, * * * but he sues alone, in his own name and his own behalf." His loss alone was too small to come within the statutory limitation, the court held. But a bill filed in the name of one or more of the taxable inhabitants for themselves and all others similarly situated the court should regard as "in the nature of a public proceeding to test the validity of the corporate acts sought to be impeached and deal with and control it accordingly." 4 *Dillon, Municipal Corporations* (5th Ed.), sec. 1587; *Kelly, Piet & Co. v. Baltimore,* 53 Md. 134, 141. Therefore the conclusion of the court is that the taxpayers' suit may be maintained in this instance.

As to the power of the court in Baltimore City to proceed and issue the injunction against the Secretary of State, after he has appeared generally and answered, it is to be observed that the objection to a suit in a jurisdiction other than that prescribed is an objection to venue, not one to jurisdiction of the subject-matter, and that the general rule that objections to venue are waived by appearance and answer applies in suits against public officers or the corporations which they represent. *Peoria Ry. Co. v. United States,* 263 U. S. 528, 536, 44 S. Ct. 194, 68 L. Ed. 427; *Rhode Island v. Massachusetts,* 12 Pet. 657, 720, 9 L. Ed. 1233. The regular venue for suit against a public officer or body is, it is true, the seat of that branch of the government of which the officer or body is a part. "The principle that is involved is that of inconvenience to the exercise of the sovereign authority delegated by the state to its municipal corporations, upon the ground that if they are to be subjected to suit in any and every part of the state, such suits must inevitably hinder and delay the successful conduct of the functions of government." *Phillips v. Baltimore,* 110 Md. 431, 72 A. 902, 905. But it has been held by this court that the objection on this ground is only one of venue, and may be waived. In *Ireton v. Baltimore,* 61 Md. 432, the municipal corporation of Baltimore City was sued in Baltimore County, and some time after the city counselor had entered a general appearance for the defendant, he moved to quash the writ of summons on the ground of lack of jurisdiction over the defendant, but it was held that the objection had been waived. "Mr. Poe," said the court, "was a law officer of the City of Baltimore, whose duty it was to attend to the trial of causes against the city. His appearance for the city to the writ was a waiver of any objection that might have been raised otherwise. We know of no reason why a municipal corporation shall not be bound by all the rules of law which control other litigants, plaintiff or defendant, in respect to appearance, and pleading, and the consequences thereof." And see *Public Service Commission v. Byron,* 153 Md. 464, 475, 138 A. 404.

In *Graham v. Harford County,* 87 Md. 321, 326, 39 A.

804, 805, it was held that an injunction could not issue from the Circuit Court for Harford County, "to restrain by injunction the fiscal officers of the state, who do not reside or are not found within that county, from doing some act, beyond the limits of the county, respecting property not actually situated in the county." But throughout the opinion prepared by Chief Judge McSherry the ruling was restricted to cases in which the officers were not found in the county. Even if found in the county, the suits against them being local, in that they should be brought in the county of the seat of their branches of the government, the officers might, as a general rule, raise an objection to the jurisdiction, in proper form. *Phillips v. Baltimore, supra.* But we find no ground for a court's declaring that the public interest always demands that suits against the Secretary of State in his official capacity be brought in Anne Arundel County, where he has his official residence, whatever may be the circumstances, and whatever may in fact be conveninent, in particular instances. And if jurisdiction over such a defendant is obtained, then we find no obstacle to the issue of an injunction for performance at the seat of the State government. "Jurisdiction in equity does not depend upon the *'situs rei,'* or residence or nonresidence of the defendant." *Keyser v. Rice,* 47 Md. 203, 211. It is common for courts of equity to issue injunctions for performance even outside of the State. *White v. White,* 7 G. & J. 208; *Buchanan v. Torrance,* 11 G. & J. 342; *Keyser v. Rice, supra; Buchanan v. Lorman,* 3 Gill, 51; *Binney's Case,* 2 Bland, 99, 145; *Phelps, Juridical Equity,* sec. 222. And the provision in section 89 of article 16 of the Code that each of the circuit judges may grant injunctions at any place in his circuit to take effect in any part of the circuit has not cut off the long established power to pass decrees against persons within the jurisdiction of any one court for action beyond the circuit. It seems to have no bearing upon such a power. Sections 88 and 89 of article 16 were originally enacted as two sections of an Act of 1852, chapter 16, which distributed among the county circuits, then four in number, and Baltimore City, the jurisdiction of the

chancellor of the State, whose office was being abolished under the provisions of the Constitution of 1851, art. 4, sec. 23. The second section gave the judges of the county circuits (not the city judges, who were always at one place) authority to act at any places within their circuits, and to have their decrees and orders take effect in any of the counties included in the circuits, numbering from two to four. This court in *Keyser v. Rice, supra,* decided in 1877, found no obstacle in the statute to a decree to restrain a person within the circuit from action by him in West Virginia. And in its present abbreviated form, as section 89 of article 16 of the Code, the purpose seems to be likewise only to make the jurisdiction of county judges coextensive with the boundaries of the circuits in which they dwell. It contains, as has been noticed, no reference to judges of Baltimore City, as the preceding section does. According to the proper construction, as we see it, the injunctions to be issued by the circuit judges would take effect in the circuits when directed to any persons subject to the jurisdiction of any court within the circuit.

But there is another consideration opposed to the confinement of the suit against the Secretary of State to the county of his official residence. He is not the only official made defendant. The supervisors of election are also parties, they are officially resident in Baltimore City, and two places of residence, and the convenience of the officials in each, are to be considered. And, so long as all these defendants are proceeded against jointly, the venue of the suit can be settled only by the adoption of the jurisdiction of one residence, necessarily outside of the jurisdiction of the other. The rule confining suits to official residences, so far as it applies, is a rule of convenience (*Phillips v. Baltimore supra*), and convenience does not require that, when officials of different residences are, apart from any question of venue, properly to be proceeded against jointly, they must nevertheless, in case of residence in different jurisdictions, be proceeded against in separate suits. Convenience requires the contrary; and insistence of the court upon separate suits

under those cirumstances would be inconvenient and without reason.

The bill of complaint is objected to as multifarious in seeking, as it does, the several reliefs of declarations that the petitions for the referendum are void and ineffectual and that the act of assembly is in full force and effect, and injunctions against the defendant officers from proceeding with the referendum sought by the petitions. In this objection we are not able to agree. These reliefs are only several parts of the one relief from the effect which might possibly be given to an alleged insufficient action by the proponents of the referendum. All can be conveniently dealt with in one proceeding. *Miller, Equity Practice,* sec. 105.

*Decree affirmed, with costs to the appellees, and cause remanded for further proceedings.*