HARRY B. SOPER *v.* E. RAY JONES, Secretary of State, et al.

[No. 4, January Term, 1937.]

644

*Decided October 16th, 1936.*

The cause was argued, as of the October Term, before BOND C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*J. Kemp Bartlett* and *Wendell D. Allen,* for the appellant.

*Charles T. LeViness, III, Assistant Attorney General,* for the Secretary of State.

*William L. All* and *William Taft Feldman,* for Ross Thalheimer, appellee.

BOND, C. J., delivered the opinion of the Court.

The appellant, as a citizen and taxpayer of Baltimore City, and registered voter in the Fourth Congressional District, filed a bill in equity to restrain the Secretary of state from certifying to the board of supervisors of elections of the city the name of Ross Thalheimer, for printing on the ballot as that of a candidate for the United States Congress from the Fourth District, at the election of November 3rd, 1936, and to restrain the board from printing the name on the ballot. A demurrer to the bill by Thalheimer, intervening on his own behalf, was sustained, and the bill dismissed. After argument on the appeal, this court concluded that the decree must be affirmed, and so ordered on October 16th, 1936, deferring the filing of a reasoned opinion to avoid delay so near the

time of election. The reasons which led to the conclusion are now stated.

The candidate, Ross Thalheimer, was not nominated at a party convention or primary election, but produced for the Secretary of State a purported certificate of nomination signed by 2,393 names, to comply with the requirement in the Code, art. 33, sec. 51, of a certificate signed by at least 1,500 names of voters in the district to procure nomination and inclusion on the ballot. It is complained that the certificate fails to comply with the statute, because oaths specified to be taken before justices of the peace appear on this certificate to have been taken before a notary public, and because fewer than 1,500 of the signatures attached conform to the statutory requirements. A question of jurisdiction in the court of equity to interfere, on these allegations, was first raised and decided below.

That the court of equity has no jurisdiction to decide election contests, and generally, to interfere in political controversies, has been decided in a number of cases in this state as well as elsewhere. *Hardesty v. Taft,* 23 Md. 512; *Hamilton v. Carroll,* 82 Md. 326, 33 A. 648; *Annapolis v. Gadd,* 97 Md. 734, 57 A. 941; *Thom v. Cook,* 113 Md. 85, 77 A. 120. But a contention that no controversy that affects elections may be heard and decided by the court would be at odds with other decisions. In *Carr v. Hyattsville,* 115 Md. 545, 81 A. 8, jurisdiction was entertained of a bill to invalidate a referendum election on an act for local improvements because the ballots used were not worded exactly as prescribed. In *Graf v. Hiser,* 144 Md. 418, 125 A. 151, it was held that an injunction should have issued to restrain any proceeding with the creation of a special taxing district because a referendum election under a statute authorizing it was not properly held, with the result that the statute had not become effective. And in *Sun Cab Co. v. Cloud,* 162 Md. 419, 159 A. 922, the holding of a referendum election was restrained on the ground that signatures attached to a petition for it were not in compliance with the constitutional requirements.

In the case last cited, a distinction was drawn between interferences by the courts with the political conduct of elections, and taking jurisdiction of a question whether persons assuming to avail themselves of the election machinery set up for private initiative are persons entitled under the law to do so. And the question in the present case seems analogous to that of which the court assumed jurisdiction. Private persons presenting a petition to have a name placed on the ballot by the prescribed method of signed certificates are alleged to be not such persons as may avail themselves of that method. There is no other tribunal which can afford the preventive remedy if this is true. The writ of *quo warranto*, found adequate in decisions in other states, is not one used in Maryland. *Hawkins v. State*, 81 Md. 306, 311, 32 A. 278. Exceptions to the rule that equity will not interfere with elections are widely recognized, although there are differences of view impossible to reconcile on principle. See 78 Univ. of Pa. Law Rev. 645; *Pomeroy, Equity Jurisprudence* (4th Ed.) secs. 1753 and 1755; Notes, 33 *A. L. R.* 1376, and 70 *A. L. R.* 733. But for the purposes of this case the precedent in *Sun Cab Co. v. Cloud, supra,* appears to settle the question sufficiently. See *McCreary, Elections* (4th Ed.) sec. 388.

The court is of opinion that the provision in section 3 of article 68 of the Code, empowering notaries to administer oaths in all matters and cases of a civil nature in which a justice of the peace may administer an oath, applies to validate the oaths to the names on this certificate. It is comprehensive in its terms, with the apparent intention of removing any restriction of administration of oaths to justices only, and it is generally understood to give notaries the power in all cases. We can think of no object in excepting these particular oaths from the general rule.

The Election Law, Code, art. 33, sec. 51, requires that the signers of the certificates shall be voters residing in the political division in and for which the officer is to be elected, and that affidavits annexed shall state that

they are registered voters of the district or precinct in which they respectively reside. And it is averred that of the 2,393 signatures here presented, 1,347 are not registered at addresses given as residences of the signers. To this charge objection is made that such a blanket, indefinite, allegation of facts not to be found from the certificate itself is not sufficient to require an answer, that the defendants should first be informed what names are referred to, but we may pass that. *Miller, Equity Procedure,* 116. It is found sufficient as a reply that, in the opinion of the court, the statute is intended to require only that signers of certificates for candidates for Congress shall reside in the congressional district, and that the affidavits attached shall state that they are residents in the district. The statute must contemplate changes of residence within the district during the period covered by registration, and the fact that 1,347 persons are not now residents at the addresses given on the registration books is not of itself indicative of residence outside the district.

It is averred, further, that of the 2,393 signers, 1,416 fail to state their business addresses and 880 their occupations, as is expressly required by section 51 of article 33. This raises a question whether deficiencies in these respects are intended by the statute to render the signatures ineffectual, and not to be counted in the number required. Whatever the statute intends must, of course, be carried out, but there is no express provision that statements of the business addresses and the occupations are so essential to the signatures, and the intention must be inferred mainly from the result which would be accomplished by one construction and the other. *Graham v. Wellington,* 121 Md. 656, 661, 89 A. 232. The statements, if given, would aid in determining whether the signers are to be counted within the purpose of the statute, and would facilitate detection of frauds. But they are not the sole reliance for assurance of the qualifications of the signers, for affidavits that they are voters in the district are to be furnished. If the statements to be appended to the

respective signatures should be essential, then one accidental omission from a petition of exactly 1,500 names would render the whole a nullity. And this would seem to be a result out of proportion to the purpose and importance of the certificate to be issued, which is not to have the final effect of electing an officer, but only that of procuring the printing of his name on the ballot for the voters to dispose of as they choose. Omissions might sometimes indicate concealment and lend support to a charge of fraud, but this is not a suit on a charge of fraud. Fraud is not averred.

Decisions in other states have generally regarded such requirements as directory. *Stackpole v. Hallahan,* 16 Mont. 40, 40 P. 80; *Hollon v. Center,* 102 Ky. 119, 43 S. W. 174. "The people, on election day, will vote only for the candidates of their choice, and are not likely to be seriously misled by any fraudulent * * * nomination. On the other hand most deplorable consequences might ensue if contentions over the regularity of nomination papers are to be prolonged past the time when the officers charged with the duty of certifying to nominations, and causing ballots to be printed, are required by law to act in preparing for the election." *Simpson v. Osborn,* 52 Kan. 328, 34 P. 747, 749. "Generally speaking, provisions which are not essential to a fair election will be held to be directory merely, unless the contrary clearly appears from the act itself." *State v. Allen,* 43 Neb. 651, 62 N. W. 35, 38. "If the law itself declares a specified irregularity to be fatal, the courts will follow that command irrespective of their views of the importance of the requirement. * * * In the absence of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had, or had not so vital an influence * * * as probably prevented a free and full expression of the popular will." *Bowers v. Smith,* 111 Mo. 45, 61, 20 S. W. 101, 105. Upon this reasoning we conclude that the omissions are not fatal to the nomination in this instance, and would not justify the issue of an injunction. It may be added, as argued on behalf

of the appellee, Thalheimer, that at this time it is not beyond possibility that many signers may have no business addresses or occupations.

With these objections met, objections remaining would not affect a sufficiently large number of signers to reduce the total below 1,500, and they need not therefore be dwelt upon. Other questions argued need not be decided.