### CAVEN et al. v. CLARK et al.
### Civ. 308.

District Court, W. D. Arkansas, Texarkana Division.

June 19, 1948.

Smith & Sanderson, Arnold & Arnold, Alston & Woods, Will Steel, T. B. Vance and Gene Rowlette, all of Texarkana, Ark., for plaintiffs.

Shaver, Stewart & Jones, and Bert B. Larey, all of Texarkana, Ark., and Johnson & Johnson, of Ashdown, Ark., for the moving defendants.

LEMLEY, District Judge.

This matter comes on for hearing upon motion of the defendants to dismiss the plaintiffs' complaint as amended.

It is alleged by the plaintiffs, G. T. Caven and nineteen others, in their original complaint that they are citizens and qualified electors of Miller County, Arkansas, in the Fourth Congressional District of Arkansas, and that as such they desire to cast their votes for the candidates of their choice in the approaching Democratic Congressional Primary Elections without having their votes impaired, diminished, diluted, or destroyed by the illegal casting of ballots by persons not entitled to vote in said elections; that certain of the defendants, namely, Clark, Helms, Scoggins, Dunn and Brackett, have conspired to control the 1948 Democratic Primary Elections to be held in Miller County, Arkansas, in July and August, 1948, including the Congressional Primary, and in furtherance of said alleged conspiracy have illegally procured the issuance of a large number of poll tax receipts, expiring October 1, 1948, and have unlawfully paid the poll taxes for a large number of persons, and have unlawfully obtained receipts therefor, in a total amount of 2,502, with the intent of using the same in the control of said elections, and that unless the plaintiffs are given by this court the relief prayed for in said complaint, that said alleged illegal poll tax receipts will be used in casting the votes of the persons named therein, and that thereby said elections will be controlled and the effect of the votes of the plaintiffs accord-

ingly diminished; and, among other things, they pray for the following relief:

(1) For an interlocutory order requiring the defendants above named to show cause why they should not be required to deposit in the office of the Clerk of this Court the poll tax receipts referred to in the complaint and listed in exhibits thereto.

(2) For a mandatory injunction requiring the defendant Ell Westbrook, Miller County Clerk, to purge the records of Miller County, Arkansas, of the names shown on said poll tax receipts.

(3) For a mandatory injunction requiring the defendants Beall, Smith and Richards, as Election Commissioners of Miller County, Arkansas, to recall the poll tax books issued in said county and strike therefrom the names appearing on the poll tax receipts above referred to.

Simultaneously with the filing of their original complaint, the plaintiffs filed a motion for leave to take the depositions of certain of the defendants before the joining of issue, and a hearing was had thereon in due course. The motion was resisted by the defendants and at the hearing the defendants filed a motion to dismiss the plaintiffs' complaint for want of jurisdiction, and for other reasons. In an oral opinion, the court overruled the plaintiffs' motion to take depositions, on the ground that the rights asserted by the plaintiffs in their complaint were purely political rights, and that he had grave doubt as to the jurisdiction of a court of equity to grant the injunctive relief prayed for in the complaint, and in this connection the court in his oral opinion referred to the decision of the Supreme Court of the United States in Giles v. Harris, 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909. The court also stated that even if the facts alleged constituted grounds for equity jurisdiction, he still had serious doubt as to his power to adjudicate the rights of the holders of the 2,502 poll tax receipts above referred to in an action wherein they were not made defendants. The court at the time, however, declined to pass upon the defendants' motion to dismiss and asked that it be submitted on written briefs.

Subsequent to the hearing on the motion to take depositions before the joining of issue, the plaintiffs filed an amendment to their complaint and brought in as parties defendant herein 67 of the 2,502 persons listed in the original complaint as holders of invalid poll tax receipts, and alleged that the character of the rights of the plaintiffs sought to be enforced against all of the 2,502 persons is several, and that there are common questions of law and fact involved affecting said rights and their enforcement, and that common relief is sought; that it is impracticable to bring in all of said persons as parties defendant, and that the naming of said 67 as such will fairly insure the adequate representation of all of said persons. Service has been had upon 42 of these 67 defendants.

In the amendment to their complaint, the plaintiffs ask for the relief originally prayed for, and in addition thereto ask for a declaratory judgment under the provisions of 28 U.S.C.A. § 400:

(A) Declaring and adjudicating the right of plaintiffs to cast their ballots in the approaching Congressional Primaries without having the effect thereof diminished and diluted by the casting of the ballots of the 2,502 persons named in the original complaint;

(B) Declaring and adjudicating the illegality of the inclusion of the names of said 2,502 persons in the poll tax list published by the Election Commissioners; and

(C) Declaring and adjudicating that said 2,502 persons are not entitled prima facie to vote in said elections.

To the complaint as amended the defendants have renewed their motion to dismiss. They set out numerous grounds for dismissal, but in view of the conclusion that we have reached, we find it necessary to discuss one ground only, namely, whether this court has equitable jurisdiction to grant an injunction or to render a declaratory judgment in protection of the political rights set up by the plaintiffs.

Under the decisions of the Supreme Court of the United States in the cases of In re Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402, Giles v. Harris, supra, Lane v. Wil-

son, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, and Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, we are satisfied that this court has no such jurisdiction.

It cannot be questioned that the rights asserted by the plaintiffs are political rights. Political rights, as defined by Bouvier, who bases his distinctions on Blackstone, "consist in the power to participate, directly or indirectly, in the establishment or management of government. These political rights are fixed by the constitution. Every citizen has the right of voting for public officers, and of being elected; these are the political rights which the humblest citizen possesses."

In Re Sawyer, supra, the Supreme Court said, quoting from Kerr on Injunctions, and Sheridan v. Colvin, 78 Ill. 237: "It is elementary law that the subject matter of the jurisdiction of a court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. * * * The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right to property. Nor do matters of a political nature come within the jurisdiction of the Court of Chancery."

Civil rights (which rights are referred to by the Supreme Court in the foregoing quotation) "have no relation to the establishment or management of the government. They consist in the power of acquiring and enjoying property and exercising the paternal and marital powers, and the like." Davis v. Wilson, 183 Ark. 271, 276, 35 S.W.2d 1020, 1023; 7 Words & Phrases, Perm.Ed., 340; 1 Bla.Com. 124-139.

For a full discussion of the distinctions between political rights and civil rights, and for citation of numerous cases on the point that the right to vote is a political right, see the opinion of the three-judge federal district court in Blackman v. Stone, D.C., S.D.Ill., 17 F.Supp. 102.

Giles v. Harris, supra [189 U.S. 475, 23 S.Ct. 640], was a bill in equity brought by a colored man in a Circuit Court of the United States, on behalf of himself "and on behalf of more than five thousand negroes, citizens of the county of Montgomery, Alabama, similarly situated and circumstanced as himself," against the board of registrars of that county. The prayer of the bill was that the defendants be required to enroll upon the voting lists the names of the plaintiff and of all other qualified members of his race who applied for registration before a certain date, and were refused. The plaintiff alleged that he had applied to the board for registration as a voter, but was refused arbitrarily on the ground of his color, together with large numbers of other qualified Negroes, while all white men were registered, and that the same thing had been done all over the State of Alabama. The question of equity jurisdiction was raised by the circuit judge before whom the case was pending, and that question alone was certified to the Supreme Court of the United States. The Supreme Court held that a federal court of equity had no jurisdiction to grant the relief prayed for. The plaintiff contended that the court had judisdiction by reason of one of the federal statutes upon which the plaintiffs in the instant case rely, 8 U.S. C.A. § 43, which reads as follows: "Every person who, under color of any statute, * * * of any State or Territory, subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, * * * secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The Court, in referring to this contention, said: "It seems to us impossible to grant the equitable relief which is asked. It will be observed, in the first place, that the language of § 1979 (the same statute as 8 U.S.C.A. § 43) does not extend the sphere of equitable jurisdiction in respect of what shall be held an appropriate subject-matter for that kind of relief. The words are 'shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.' They allow a suit in equity only when that is the proper proceeding for redress, and they refer to existing standards to determine what is a proper proceeding. The traditional limits

of proceedings in equity have not embraced a remedy for political wrongs. Green v. Mills, 4 Cir., 69 F. 852, 30 L.R.A. 90."

The Court then proceeded to point out another reason why the relief could not be granted, involving a difficulty which is usually encountered in cases like the instant one, and in so doing used the following language: "The other difficulty is of a different sort, and strikingly reinforces the argument that equity cannot undertake now, any more that it has in the past, to enforce political rights, * * *. In determining whether a court of equity can take jurisdiction, one of the first questions is what it can do to enforce any order that it may make. * * * The bill imports that the great mass of the white population intends to keep the blacks from voting. To meet such an intent something more than ordering the plaintiff's name to be inscribed upon the lists of 1902 will be needed. If the conspiracy and the intent exist, a name on a piece of paper will not defeat them. Unless we are prepared to supervise the voting in that state by officers of the court, it seems to us that all that the plaintiff could get from equity would be an empty form. Apart from damages to the individual, relief from a great political wrong, if done, as alleged, by the people of a state and the state itself, must be given by them or by the legislative and political department of the government of the United States."

In this decision the Supreme Court cited with approval Green v. Mills, supra. In that case the Circuit Court of Appeals of the Fourth Circuit said (69 F. 857, 858): "It is well settled that a court of chancery is conversant only with matters of property and the maintenance of civil rights. The court has no jurisdiction in matters of a political nature, nor to interfere with the duties of any department of government, unless under special circumstances, and when necessary to the protection of rights of property, nor in matters merely criminal, or merely immoral, which do not affect any right of property."

" 'On this branch of the inquiry, it seems to the court very clear that a court of equity cannot be invoked to prevent the performance of political duties like those committed to the officers of registration under the law. The willful, fraudulent, or corrupt refusal of a vote by the judges of election, or a like denial of registration by the officer appointed to register votes, which is the same thing, can be adequately compensated for in damages at law. * * * Each voter has a separate and distinct remedy for the willfully improper deprivation of his vote; * * * For irregularities in the conduct of an election, for receiving illegal or rejecting legal votes, and for the correction of consequences resulting therefrom, the law provides appropriate remedies and modes of procedure. Such matters are not the subjects of equitable jurisdiction.' " Hardesty v. Taft, 23 Md. 513, 87 Am.Dec. 584.

The principle of law laid down in Giles v. Harris, supra, was again announced by the Supreme Court in Lane v. Wilson, supra, a decision rendered May 22, 1939. Lane v. Wilson was an action for $5,000 damages brought by a colored citizen of the Eastern District of Oklahoma, under 8 U.S.C.A. § 43, above referred to, claiming discriminatory treatment resulting from electoral legislation of Oklahoma, in violation of the Fifteenth Amendment to the Constitution. The action was at law for damages, and not one in equity for an injunction or a declaratory judgment as is the instant case. In holding that an action for damages would lie, and in distinguishing the case under consideration from Giles v. Harris, supra, the Supreme Court said [307 U.S. 268, 59 S.Ct. 874]: "The first objection (to the jurisdiction of the court) derives from a misapplication of Giles v. Harris, 189 U.S. 475, 23 S.Ct. 639, 640, 47 L.Ed. 909. In that case a bill in equity was brought by a colored man on behalf of himself 'and on behalf of more than five thousand negroes, citizens of the county of Montgomery, Alabama, similarly situated' which in effect asked the federal court 'to supervise the voting in that State by officers of the court.' What this court called a 'new and extraordinary situation' was found 'strikingly' to reinforce 'the argument that equity cannot undertake now, any more than it has in the past, to enforce political rights.' See 189 U.S. at

page 487, 23 S.Ct. at page 642, 47 L.Ed. 909. Apart from this traditional restriction upon the exercise of equitable jurisdiction there was another difficulty in Giles v. Harris * * *.

"This case is very different from Giles v. Harris—the difference having been explicitly foreshadowed by Giles v. Harris itself. In that case this Court declared 'we are not prepared to say that an action at law could not be maintained on the facts alleged in the bill.' 189 U.S. at page 485, 23 S.Ct. at page 641, 47 L.Ed. 909."

In Lane v. Wilson the Supreme Court in effect said that an action for damages at law can be maintained for violation of the political rights of a citizen, but that a bill in equity for an injunction will not lie because equity has no jurisdiction to grant the injunction.

Colegrove v. Green, supra, decided June 10, 1946, involved an appeal from a decree of a federal district court of three judges which dismissed a complaint in a suit to restrain state officers from arranging for an election in which members of Congress were to be chosen, pursuant to provisions of an Illinois law governing Congressional Districts. The complaint alleged that by reason of later changes in population the Congressional Districts created by the Illinois law lacked compactness of territory and approximate equality of population, and prayed a decree under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, declaring the provisions of the state law invalid as in violation of various provisions of the federal constitution and in conflict with the Reapportionment Act of 1911, as amended, 2 U.S.C.A. § 2a. In affirming the decision of the lower court, the Supreme Court said [328 U.S. 549, 66 S.Ct. 1199]:

"We are of opinion that the petitioners ask of this Court what is beyond its competence to grant. This is one of those demands on judicial power which cannot be met by verbal fencing about 'jurisdiction.' It must be resolved by considerations on the basis of which this Court, from time to time, has refused to intervene in controversies. It has refused to do so because due regard for the effective working of our Government revealed this issue to be of a peculiarly political nature and therefore not meet for judicial determination.

" * * * Nothing is clearer than that this controversy concerns matters that bring courts into immediate and active relations with party contests. From the determination of such issues this Court has traditionally held aloof. It is hostile too a democratic system to involve the judiciary in the politics of the people. And it is not less pernicious if such judicial intervention in an essentially political contest be dressed up in the abstract phrases of the law.

"The petitioners urge with great zeal that the conditions of which they complain are grave evils and offend public morality. The Constitution of the United States gives ample power to provide against these evils. But due regard for the Constitution as a viable system precludes judicial correction. Authority for dealing with such problems resides elsewhere. * * *.

"Courts ought not to enter this political thicket. * * * The Constitution has many commands that are not enforceable by courts because they clearly fall outside the conditions and purposes that circumscribe judicial action. Thus, 'on Demand of the executive Authority,' Art. IV, § 2, of a State it is the duty of a sister State to deliver up a fugitive from justice. But the fulfilment of this duty cannot be judicially enforced. Kentucky v. Dennison, 24 How. 66, 16 L.Ed. 717. The duty to see to it that the laws are faithfully executed cannot be brought under legal compulsion. Mississippi v. Johnson, 4 Wall. 475, 18 L.Ed. 437. Violation of the great guaranty of a republican form of government in States cannot be challenged in the courts. Pacific States Telephone Co. v. Oregon, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377. The Constitution has left the performance of many duties in our governmental scheme to depend on the fidelity of the executive and legislative action and, ultimately, on the vigilance of the people in exercising their political rights."

As in Colegrove v. Green, so in the instant case the plaintiffs "urge with great zeal that the conditions of which they

complain are grave evils and offend public morality." Conceding such to be true, the remedy does not lie in a federal court of equity.

■ Nor does it avail the plaintiffs anything that they have amended their complaint and now ask for relief under the Federal Declaratory Judgment Act, 28 U. S.C.A. § 400. This question also is disposed of in Colegrove v. Green, supra, wherein the Court said: "To be sure, the present complaint, unlike the bill in Wood v. Broom [287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 13], was brought under the Federal Declaratory Judgment Act which, not having been enacted until 1934, was not available at the time of Wood v. Broom. But that Act merely gave the federal courts competence to make a declaration of rights even though no decree of enforcement be immediately asked. It merely permitted a freer movement of the federal courts within the recognized confines of the scope of equity. The Declaratory Judgment Act 'only provided a new form of procedure for the adjudication of rights in conformity' with 'established equitable principles.' Great Lakes Co. v. Huffman, 319 U.S. 293, 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407. And so, the test for determining whether a federal court has authority to make a declaration such as is here asked, is whether the controversy 'would be justiciable in this Court if presented in a suit for injunction * * *.' Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 262, 53 S.Ct. 345, 348, 77 L.Ed. 730, 87 A.L.R. 1191."

The plaintiffs apparently do not question the fact that their political rights only are involved here, but they contend that the Supreme Court decisions which we have cited, since the facts are not identical with those in the instant case, are not controlling; that the rule that a court of equity will not interfere to protect purely political rights is not sound and has been to some extent abandoned by certain courts; and that it should not be followed here by reason of the fact that they have no remedy at law, inasmuch as, not being candidates, they cannot personally contest an election which may result adversely to the candidate or candidates (unnamed) who may be supported by them.

It is true that the facts in Re Sawyer, Giles v. Harris, Lane v. Wilson, and Colegrove v. Green, supra, are not identical with the facts in the instant case. Rarely will the facts in any one case be found to be the same in all respects as those in another case, but the principle announced in those decisions applies here, and the reasons back of the rule there announced likewise apply here: "From the determination of such (political) issues (as here involved) this Court has traditionally held aloof. It is hostile to a democratic system to involve the judiciary in the politics of the people. And it is not less pernicious if such judicial intervention in an essentially political contest be dressed up in the abstract phrases of the law." 328 U.S. 553, 554, 66 S.Ct. 1200, 90 L.Ed. 1432.

In the light of the language of the Supreme Court which we have heretofore quoted from its opinion in Colegrove v Green, supra, decided in 1946, it certainly cannot be said that that Court, by whose decisions we are of course bound, has in any sense strayed from the rule announced by it in Giles v. Harris, supra, forty-five years ago. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, cited and discussed by counsel for the plaintiffs, did not involve political rights.

Nor can we agree that there is any substantial authority to the contrary. On the other hand, the overwhelming weight of authority sustains the rule as announced by the Supreme Court. What is denominated as "the accepted rule" is set out in 18 Am. Jur., Elections, Sec. 326, as follows: "In considering the general powers of the courts, a distinction has been drawn between the jurisdiction of courts of equity and of law, based upon a distinction between political and civil rights. Since the right of suffrage is political, the accepted rule is that its assertion and protection are not properly matters for the cognizance of courts of equity. The extraordinary jurisdiction of courts of chancery cannot, therefore, be invoked to protect the right of a citizen to vote or to be voted for at an election or his right to be a candidate for, or to be elected to, any office; nor can such jurisdiction be invoked for the purpose of restraining the holding of an election or

of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held."

See also 30 C.J.S., Equity, § 66, where it is said: "Questions purely political or governmental in their nature cannot be heard or determined by a court of equity. * * * Generally, matters pertaining to elections are deemed to be purely political questions and hence outside the scope of equitable jurisdiction."

Such is the law in Arkansas. Walls. v. Brundidge, 109 Ark. 250, 160 S.W. 230, Ann.Cas.1915C, 980. And also the law, with few exceptions, generally. Howard v. Sheldon, 151 Miss. 284, 117 So. 839; Brumfield v. Brock, 169 Miss. 784, 142 So. 745; Wood v. State, 169 Miss. 790, 142 So. 747; City of Dallas **v.** Dallas Consolidated Electric St. R. Co., 105 Tex. 337, 148 S.W. 292; Watson v. Cochran, Tex.Civ.App., 171 S.W. 1067; Shipman v. Jones, Tex.Civ. App., 199 S.W. 329; Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012; Winder v. King, Tex.Com.App., 1 S.W.2d 587; Adamson v. Connally, Tex.Civ.App., 112 S. W.2d 287; Cundiff v. Jeter, 172 Va. 470, 2 S.E.2d 436; Bullard v. Culpepper, 190 Ga. 848, 11 S.E.2d 19; State ex rel. Reynolds v. Fielder, 110 W.Va. 240, 157 S.E. 597; State ex rel. Raines v. Tobin, 69 Ohio App. 59, 42 N.E.2d 1009; Williams v. O'Neill, 142 Ohio St. 467, 52 N.E.2d 858; Davis v. Hambrick, 109 Ky. 276, 58 S.W. 779, 51 L.R.A. 671; Elder v. Mall, 350 Ill. 538, 183 N.E. 578; Fletcher v. City of Paris, 377 Ill. 89, 35 N.E.2d 329; Putnam v. Pyle, 57 S.D. 250, 232 N.W. 20; State ex rel. Rice v. Cozad, S.D., 16 N.W. 2d 484; Soper v. Jones, 171 Md. 643, 187 A. 833; Ponder v. Boone, 134 La. 583, 64 So. 476; Reid v. Brunot, 153 La. 490, 96 So. 43; State ex rel. Morris v. Sherman, 63 N.D. 9, 245 N.W. 877; Boss v. Sprague, 53 R.I. 1, 162 A. 710; Brown v. Costen, 176 N.C. 63, 96 S.E. 659; Printup v. Adkins, 150 Ga. 347, 103 S.E. 843; Avery v. Hale, 167 Ga. 252, 145 S.E. 76; Sibley v. Camp, 175 Ga. 846, 166 S.E. 212; State ex rel. Barber v. Circuit Clerk for Marathon County, 178 Wis. 468, 190 N.W. 563; Joughin v. Parks, 107 Fla. 833, 147 So. 273. See also other cases cited under Footnote 17, 18 Am.Jur., Elections, Sec. 326, and Footnote 28, 30 C.J.S., Equity, Sec. 66.

■ The plaintiffs are mistaken in their contention that they are without a remedy. The decisions cited by us are merely to the effect that their remedy does not include relief by injunction or a declaratory judgment sought in an equity suit. As pointed out in Blackman v. Stone, supra, it does not follow from these decisions that political rights are less important than civil rights, nor is one whose political rights are invaded, left without a remedy. If by reason of the alleged unlawful conspiracy, the effect of the plaintiffs' votes in the approaching Congressional Primaries is diminished or diluted, as alleged, they each, individually, have a right of action for damages against the alleged conspirators. See Lane v. Wilson, supra; Green v. Mills, supra; Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759; Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L. Ed. 987, 151 A.L.R. 1110; Cf. United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341.

Likewise; the public generally may not be altogether without a remedy. The federal courts have jurisdiction over indictments for federal crimes involving elections. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; United States v. Saylor, supra. And, we might add, that, as noted in the Colegrove case, the performance of many duties in our governmental scheme depends on executive and legislative action, and ultimately on the vigilance of the people in exercising their political rights. With respect to legislative action, an amendment of the poll tax laws of the State of Arkansas, providing that one's poll tax cannot be paid by, or the receipt therefor delivered to, any one other than the voter or a member of his immediate family, would probably cure many of the evils of which the plaintiffs complain.

■■ The reasons back of the rule that a court of equity will not grant an injunction in the protection of a purely political right have been variously stated by different courts. Some of these reasons are forcefully given in our quotation from

Colegrove v. Green, supra. Other courts state that a primary reason is that courts of equity wield the strong force of injunction, exercised through a single individual, and oftentimes upon an ex parte hearing. Hearings are sometimes had in chambers. The exercise of such power in governmental or political matters, by one man, is contrary to the policy of the courts, would tend to destroy the confidence of the people in their courts, and bring about a government by injunction. Injunction is always an extra ordinary remedy. Disobedience is punishable by fine or imprisonment. Some of the courts call attention to the fact that an injunction could be granted on the eve of an election, thereby depriving the party enjoined of his rights without power of effective appeal.

It was·pointed out by the Supreme Court in Giles v. Harris, supra, that Congress has not seen fit to enact a statute giving federal equity courts jurisdiction to grant injunctions (or declaratory judgments for that matter) in the protection of purely political rights. Until such is done, federal courts of equity, in our opinion, have no jurisdiction to grant an injunction, or relief by way of declaratory judgment, in the protection of purely political rights. The remedy is elsewhere.

The motion to dismiss is granted.