FOWLER *v.* BOARD OF SUPERVISORS
OF ELECTIONS FOR PRINCE
GEORGE'S COUNTY

[No. 335, September Term, 1970.]

*Per Curiam Order October 19, 1970.*

*Opinion Filed November 16, 1970.*

### Per Curiam Order

For reasons to be stated in an opinion to be filed later, it is this 19th day of October, 1970

ORDERED by the Court of Appeals of Maryland that the decree appealed from, dismissing the petition of the appellant be, and it is hereby, affirmed with costs to be paid by the Board of Supervisors of Elections for Prince George's County; and it is further

ORDERED that the mandate be issued forthwith. ■

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

Flora Daun Fowler in proper person.

*William V. Meyers* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

By per curiam order of October 19, 1970 we affirmed for the reasons that follow the decree of the Circuit Court for Prince George's County dismissing the bill of Flora Daun Fowler, the appellant, that sought to have declared invalid the primary election conducted on September 15 in Prince George's County, and to have ordered a new primary election.

Mrs. Fowler claims standing to sue as a candidate and a resident and taxpayer of the County. She was one of twenty-five candidates in the Democratic primary who sought to become one of five nominees for County Com-

missioner. She ran twenty-first, receiving 8619 votes fewer than the lowest of five winners. She does not claim the irregularities in the election processes would have changed the result; indeed, she said she no longer wanted to become a County Commissioner or to run if a new primary were ordered. Furthermore, her most vigorous and plausible complaint is about disenfranchisement of Republican voters in the Republican primary. This Court held in *Sun Cab Co. v. Cloud*, 162 Md. 419, 426-427, that a taxpayer could seek the aid of a court of equity to enjoin an invalid election because he was preventing a waste of funds derived from taxation, but here the election had been held when judicial aid was sought.

The question of standing does not seem to have been raised below and was not urged in this Court. Although we had grave doubts that Mrs. Fowler had standing, we assumed for the purpose of decision that she had and affirmed the decree appealed from rather than dismiss the appeal.

The testimony of twenty-two witnesses before Judge Powers established that (a) some voting machines had not been properly "zeroed" before the first vote was cast; (b) some machines had not been correctly programmed so that Republican candidates in one sub-district were listed on machines placed in another sub-district (in the afternoon the errors were corrected and the polls in the affected places stayed open to Republican voters for an additional two hours, until 10:00 p.m., and this fact was frequently and widely announced on television and radio) ; (c) some machines had levers that were locked; (d) a number of service men from the headquarters of the voting machine company were flown to the County on the day of the election to repair and adjust machines and this caused delay; (e) the official records and reports of these repairmen were informally made and not in strict conformity with the directives of the statutes; (f) unauthorized persons repaired and adjusted the machines; (g) levers were operative at some blank spaces; and (h) security was not as tight as it should have been at the

warehouse where the machines were taken after the election.

Judge Powers said:

> "I can, with no difficulty, find as a fact that these irregularities occurred during the primary election and that they had passed the point of being minor, and, although that is a relative term, you could very well say that some irregularities were extremely serious and of major proportions."

He also said:

> "There was no evidence whatever adduced or proffered in this case that there was any improper or illegal attempt either to add to or reduce the proper vote of any particular candidate—in other words, the kind of fraud which would result in some one or more people causing the candidate who should have been elected to be rejected and some other candidate elected instead. That is not alleged here, nor is there any proof whatever of that. Further, there is no evidence of any specific individual who was not permitted to vote. There is some evidence that people who sought to vote were not able to, there is some evidence that some of those people did not return and there is evidence that some said they were not going to return but there is no evidence whether they did or did not return. But we have no evidence in the case of any person by name who sought to vote and was not permitted and did not vote that day."

Judge Powers concluded, correctly we think, that under the rationale and holding of *McNulty v. Board of Elections,* 245 Md. 1, and cases therein cited, the decisive question was "whether or not eligible voters who sought to cast a vote * * * were deprived of votes and whether or not, had they voted, this vote would have changed the

outcome of the election." His findings of fact, the accuracy of which is not really challenged, were that there was no showing that any specific individual had been deprived of his franchise and therefore no showing that the irregularities affected the result of any election contest. Therefore, he found that:

"though there were unfortunate and regrettable irregularities * * *, many more than would be excusable or understandable in an election of that size, * * * there is no evidence that the irregularities affected the fairness of the election and, therefore, it would be my duty to sign a decree * * * dismissing the petition."

We find that Judge Powers well recognized and properly performed his duty in applying the controlling law to the established facts.